COOLEY LLP
JOHN HEMANN (165823)
(jhemann@cooley.com)
MAX A. BERNSTEIN (305722)
(mbernstein@cooley.com)
ELEANOR W. BARCZAK (329180)
(ebarczak@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:   +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant MANISH LACHWANI
and Non-Party COOLEY LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MANISH LACHWANI,<br><br>Defendant. | CASE NO. 21-cr-00353 CRB<br><br>**NON-PARTY COOLEY LLP'S REPLY BRIEF IN SUPPORT OF MOTION TO QUASH GRAND JURY SUBPOENA**<br><br>Hearing Date: August 10, 2022 |

## I.   INTRODUCTION

The government's opposition to Cooley's motion to quash concedes every material point. The government admits it drafted a subpoena for whole devices because a narrower subpoena for specific categories of documents would invade the attorney-client privilege and Mr. Lachwani's constitutional rights. The government concedes it does not know what is on Mr. Lachwani's devices and has subpoenaed them to find out. And the government acknowledges it waited until May 2022 to issue the subpoena even though it knew all it needed to know to subpoena them by September 2021.

These concessions require that the subpoena be quashed. The government cannot circumvent the act-of-production privilege by subpoenaing a whole device to access the data and documents whose production it cannot compel. The foregone-conclusion doctrine does not apply when the government does not know whether the documents it is seeking exist. And the grand jury cannot be roused after months of inaction to issue subpoenas for materials the government believes it needs for trial.

The government's eleventh-hour quest for evidence in the offices of an indicted defendant's attorneys is unusual, unbecoming, and unconstitutional. Cooley's motion to quash should be granted.

## II. ARGUMENT

The parties agree on the legal framework the Court should apply to evaluate the issue presented. To borrow the government's formulation: "When an individual transfers materials to his or her attorneys to obtain legal assistance, those materials, if unobtainable from the client, are unobtainable from the attorney under the attorney-client privilege." Opp'n at 10 (citing *United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1202 (9th Cir. 2013)). It is undisputed that Mr. Lachwani transferred a laptop and cell phone to counsel at Cooley for purposes of legal advice. The question, then, is whether the government could subpoena the laptop and cell phone directly from Mr. Lachwani in the event he still possessed them. Because the answer to this question is no, the attorney-client privilege shields the devices from production by Cooley—and the subpoena must therefore be quashed.

### A. The Act-of-Production Privilege Applies

The government contends that Mr. Lachwani cannot assert his act-of-production privilege under the Fifth Amendment because the subpoena is directed at devices rather than specific categories of documents or data. According to the government, there is nothing testimonial about producing the devices because Mr. Lachwani has already told the government that the devices exist. Opp'n at 9-12.

It is true that the subpoena, by its terms, seeks to compel only production of hardware

whose existence is not in dispute. But the government's focus on devices rather than data elevates form over substance. The Court need only read the government's brief to appreciate that the prosecution is interested in the devices because of the documents and data it believes the devices contain. To wit:

- "The FBI believes that Lachwani's cell phone is likely to contain evidence of a crime, including evidence identifying his co-conspirators (if any)." Opp'n at 4.
- "Lachwani also sent forged and/or altered invoices to a Headspin contractor . . . . The invoices likely were created and/or altered on Lachwani's laptop. If the FBI were to obtain the laptop, it could perform a forensic analysis of the computer to learn how the documents were created and altered, including whether other individuals were involved." *Id.*
- "Given that Lachwani was the CEO of Headspin during the relevant time, his laptop and cellphone are likely to contain evidence implicating any others involved in the criminal activity at Headspin." *Id.* at 9.

It is the information on the devices—not the devices themselves—that the government truly seeks by way of the subpoena to Cooley.

Critically, the government concedes that it cannot subpoena that information directly. According to the government:

> [O]f course, if the government were to serve [a subpoena seeking specific categories of documents or other materials from Mr. Lachwani's devices,] it would raise Fifth Amendment concerns because it would require Cooley to determine whether individual documents fell within these categories of relevant documents and to implicitly concede the same by producing them. *Indeed, it is these kinds of subpoenas that courts have routinely quashed for violating the act of production privilege.*

*Id.* at 12 (emphasis added). The government is correct: it is well-settled that Mr. Lachwani could assert his Fifth Amendment act-of-production privilege in response to a subpoena *duces tecum* for documents from his devices. *See United States v. Hubbell*, 530 U.S. 27, 36-37 (2000). By extension, it would violate the attorney-client privilege for Cooley to produce the materials that Mr. Lachwani turned over to counsel for purposes of obtaining legal advice. *See Fisher v. United*

*States*, 425 U.S. 391, 405 (1976).

Thus, rather than subpoena documents, the government has subpoenaed whole devices. According to the government, this approach is permissible because production of the devices is not testimonial—and because once the devices are turned over, the government will get a warrant to search them for the materials it actually wants. Opp'n at 13.

Not so. The government cannot circumvent the attorney-client privilege and the Fifth Amendment by way of an evidentiary "two-step"—first subpoenaing whole devices and then searching those devices for the materials whose direct production it cannot compel. In *In the Matter of a Grand Jury Investigation*, 470 Mass. 399 (2015), the Massachusetts Supreme Court considered this issue: could the grand jury compel a law firm to produce a cell phone that a client had transferred to the firm to obtain legal advice? There, as here, the government subpoenaed the device with the stated intention of seeking a warrant to examine it later. The court rejected this approach as an end run around the Constitution:

> [T]he Commonwealth seeks to distinguish between the telephone as "physical evidence" and the concededly documentary materials that the telephone contains. The Commonwealth insists that it "only sought a grand jury subpoena for production of the physical item of evidence," and asserts that, once it acquires the telephone, "it will seek a search warrant to authorize a forensic examination of the device." But if we were to embrace this distinction, the result would empty the *Fisher* rule and the act of production doctrine of any effect: the Commonwealth could compel the production of any document based on the assertion that the subpoena was directed merely at the document as a "physical item" – an amalgam of paper, binding, and ink – and that it would get a separate search warrant before actually opening the document and reading the pages.

*Id.* at 406.

The court went on to observe that "many of the materials contained on a cellular phone are documentary"—and that "the evidentiary value of the telephone for the prosecution clearly inheres in its documentary contents, rather than in the telephone as a 'physical item.'" *Id.* at 406-07. As such, the subpoena for the cell phone was effectively a subpoena for the data on the phone—and interposing a warrant between receipt of the device and inspection of its contents did not inoculate the subpoena against the Fifth Amendment.

Other court decisions confirm that the government cannot sidestep the act-of-production

privilege by subpoenaing entire devices or drives. For example, in *In re Grand Jury Subpoena Duces Tecum (U.S. v. Doe)*, 670 F.3d 1335 (11th Cir. 2012), the Eleventh Circuit considered a subpoena for the full, unencrypted contents of laptop computers. *Id.* at 1337. The Court held that the target, Doe, could not be compelled to comply with the subpoena because compliance "would be tantamount to testimony by Doe of his knowledge of the existence and location of potentially incriminating files; [and] of his possession, control, and access to the encrypted portions of the drives." *Id.* at 1346. Notably, the Eleventh Circuit rejected the government's argument that "production of the unencrypted files would be nothing more than a physical nontestimonial transfer." *Id.* In reality, the government "sought the files being withheld"—and thus any production by Doe would be testimonial in nature and beyond the power of the government to compel. *Id.*

Here, too, the government's subpoena for devices is effectively a subpoena for their contents. The government cites no authority blessing its two-step approach to obtaining documents it could not subpoena directly. And while the prosecution submits that a warrant will guard against any *Fourth* Amendment issues (*e.g.*, an invasion of Mr. Lachwani's privacy), Opp'n at 12,[1] the government never grapples with the reality that the *Fifth* Amendment is offended by compelled production of the data and documents on Mr. Lachwani's devices whether or not the government gets a warrant before those data and documents are extracted and reviewed.

---

[1] The government's apparent willingness to seek a search warrant after the devices are produced does not explain or excuse the government's failure to subpoena specific categories of information in the first place. As Cooley has argued, the subpoena as drafted sweeps within its ambit the full universe of information that modern devices contain, with no limitations designed to tether responsive materials to the pertinent issues in this case. *See United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013) ("Laptop computers, iPads and the like are simultaneously offices and personal diaries. They contain the most intimate details of our lives: financial records, confidential business documents, medical records and private emails."). For this reason alone, the subpoena should be quashed. *See In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083, 1088 (9th Cir. 2016) ("When the government crafts subpoenas, it must make a reasonable effort to request only those documents that are relevant and non-privileged[.]"). The government's novel suggestion that the Court instead issue a protective order requiring the government to get a warrant before reviewing the devices would effectively countenance the government's violation of the Fourth Amendment and open the door to untold mischief in the future.

In the final analysis, the Court should not permit the government to neutralize the Fifth Amendment by subpoenaing a device in order to get access to its contents. Because Cooley cannot be compelled to produce materials the government could not obtain directly from Mr. Lachwani, and because Mr. Lachwani's act-of-production privilege shields him against production of documents and data on his laptop and cell phone, the subpoena should be quashed.

### B. The Existence of the Materials the Government Seeks Is Not a Foregone Conclusion

One cannot assert the act-of-production privilege to avoid producing materials whose existence is a foregone conclusion. *See Fisher*, 425 U.S. at 11. Here, the government contends that the foregone-conclusion doctrine applies because the existence of Mr. Lachwani's laptop and cell phone is already known to the government. Opp'n at 10.

This argument rests on the same illusory distinction between a device and its contents that infects the rest of the government's Fifth Amendment analysis. The relevant inquiry for foregone-conclusion purposes is not whether the government knows about the devices; the question is whether the government knows of the existence of the documents and data it seeks to extract from the devices once they are produced. *See Doe*, 670 F.3d at 1346 (holding that foregone-conclusion doctrine did not apply because the government did not know whether specific files existed on the hard drives it subpoenaed). Were it otherwise, the government could invariably insulate a subpoena against the act-of-production privilege simply by seeking to compel production of whole computers or drives or accounts on the cloud, rather than the materials the government actually plans to obtain from those sources.

Here, the government acknowledges that it does not know whether the information it wants will be found on the subpoenaed devices. The government hypothesizes that Mr. Lachwani's devices are "likely to contain . . . evidence identifying his co-conspirators (if any)," Opp'n at 4—but it cannot say whether they actually do. The government imagines that allegedly forged "invoices likely were created and/or altered on Lachwani's laptop," *id.*—but it has no idea whether they actually were, which is why the government would like to "perform a forensic analysis of the computer" to find out. *Id.* The most the government can say is that "Lachwani was the CEO of

Headspin during the relevant time, [so] his laptop and cellphone are likely to contain evidence." *Id.* at 9. The government may or may not be right – but mere supposition that an item of evidence *may* exist is insufficient to establish that its existence is a foregone conclusion. *See Sideman & Bancroft*, 704 F.3d at 1202.

### C. The Government Misused the Grand Jury

The government devotes much of its brief to a defense of the curious and belated timing of the subpoena. Once again, the relevant principles of law are not in dispute. On the one hand, a grand jury may "continue to investigate" new crimes after an indictment is returned. Opp'n at 5. On the other hand, the government cannot use a grand jury for the sole or dominant purpose of gathering evidence for trial. *Id.* at 6-7; *United States v. Salameh*, 152 F.3d 88, 109 (2d Cir. 1998).

Here, the circumstances surrounding the subpoena strongly suggest that the government misused the grand jury to issue it. First, the government acknowledges that there was an eight-month hiatus in the grand jury's investigation. After indicting Mr. Lachwani in September 2021, the grand jury appears to have done nothing on this case until it issued the subpoena in May 2022. Contrary to the government's suggestion, the grand jury evidently was not "continu[ing] to investigate" during this prolonged period. The government provides no evidence as to what the grand jury was doing this time, and having affirmatively relied on the assertion that the grand jury was doing *something,* it can hardly be heard to claim that whatever that was is secret under Rule 6(e).

Second, the government announced that it would file a superseding indictment against Mr. Lachwani by June 10, 2022. Dkt. 40. The subpoena, however, was not served until May 11—and it did not require production of responsive materials until twenty days later. Dkt. 48-2. According to the government's timetable, therefore, by the time the devices arrived and their contents were extracted and reviewed, the grand jury would long since have completed its work. This schedule cannot be squared with the government's contention that the subpoena was purely investigatory in nature.

Third, the subpoena was issued in the run-up to the setting of a trial date. By the date of

the subpoena, the government was well aware the Court intended to set the case for trial at the parties' next appearance. *See* Dkt. 34 ("the parties intend to meet and confer about a trial date and submit joint or opposing pretrial schedule(s) for the Court's consideration before the next status conference"); Dkt. 40 (continuing status conference in light of government's stated intention to supersede). Against this backdrop, and following months of inaction, the grand jury's sudden revival to issue a lone subpoena for two devices the government had known about since at least September[2] smacks less of continuing investigation than of box-checking (or base-covering, or flank-protecting) as the case careens toward trial.

Under these circumstances, the Court should find that the government abused the grand-jury process—or, at a minimum, conduct an evidentiary hearing to ascertain the dominant purpose of the subpoena.

## IV.   CONCLUSION

The subpoena to Cooley is overbroad. It invades the attorney-client privilege and Mr. Lachwani's constitutional rights. And it appears to constitute an abuse of the grand-jury process. For any and all of these reasons, the Court should grant the motion and quash the subpoena forthwith.

Dated:  July 27, 2022                              COOLEY LLP

By:  */s/ John H. Hemann*
       John Hemann

       Attorneys for Non-Party Cooley LLP

---

[2] The government has been investigating this case since at least August 2020, when it first subpoenaed HeadSpin. It made no effort at that time—or any time before May 2022 and the advent of trial—to obtain devices or the contents of devices belonging to Mr. Lachwani.