```
1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

4

5    UNITED STATES OF AMERICA,        )  CR-21-00353 CRB
                                      )
6                    PLAINTIFF,       )  SAN FRANCISCO, CALIFORNIA
                                      )
7              VS.                    )  AUGUST 5, 2022
                                      )
8    MANISH LACHWANI,                 )  PAGES 1-46
                                      )
9                    DEFENDANT.       )
     _____)
10
```

```
11              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE CHARLES R. BREYER
12             UNITED STATES DISTRICT JUDGE

13   A P P E A R A N C E S:

14   FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                           BY:  LLOYD A. FARNHAM
15                              NOAH STERN
                                ROSS WEINGARTEN
16                         450 GOLDEN GATE AVENUE, BOX 36055
                           SAN FRANCISCO, CALIFORNIA  94102
17
     FOR THE DEFENDANT:    COOLEY LLP
18                         BY:  JOHN HEMANN
                           3 EMBARCADERO CENTER, 20TH FLOOR
19                         SAN FRANCISCO, CALIFORNIA  94111

20                         CLARENCE DYER & COHEN LLP
                           BY:  NANCI L. CLARENCE
21                              JOSH A. COHEN
                           899 ELLIS STREET
22                         SAN FRANCISCO, CALIFORNIA  94109

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1    SAN FRANCISCO, CALIFORNIA                    AUGUST 5, 2022

2                    P R O C E E D I N G S

3        (COURT CONVENED AT 10:58 A.M.)

4            THE CLERK:  HELLO, JUDGE.

5            THE COURT:  YES, HELLO, EVERYBODY.

6            THE CLERK:  I BELIEVE WE HAVE EVERYONE IN THE PANEL.

7    ARE WE EXPECTING ANYONE ELSE?  NO?  OKAY.

8            THE COURT:  THERE ARE GOOD BACKGROUNDS HERE.  WE HAVE

9    STINSON BEACH HERE.  DO WE HAVE THE RUSSIAN RIVER?  YEAH,

10   RUSSIAN RIVER IS HERE.  LET'S SEE, WHAT ELSE DO WE HAVE?

11       OKAY.  I THINK WE CAN PROCEED.

12           THE CLERK:  OKAY, GREAT.

13       CALLING CRIMINAL ACTION CR-21-0353, U.S.A. VERSUS

14   MANISH LACHWANI.

15       COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

16           MR. FARNHAM:  GOOD MORNING, YOUR HONOR.

17       LLOYD FARNHAM, NOAH STERN, AND ROSS WEINGARTEN FOR THE

18   UNITED STATES.

19           THE COURT:  GOOD MORNING.

20           MR. HEMANN:  GOOD MORNING, YOUR HONOR.

21       JOHN HEMANN FOR MR. LACHWANI, WHO IS PRESENT VIA ZOOM AND

22   CONSENTS TO PROCEEDING VIA ZOOM.

23           MS. CLARENCE:  AND GOOD MORNING, YOUR HONOR.

24       NANCI CLARENCE AND JOSH COHEN FROM CLARENCE DYER & COHEN

25   ON BEHALF MR. LACHWANI.
```

1        THE COURT:  SO, MR. HEMANN, YOU ALSO REPRESENT

2   COOLEY; IS THAT CORRECT?

3        MR. HEMANN:  AND I ALSO -- THAT'S A GOOD POINT, YOUR

4   HONOR.  AND I ALSO REPRESENT COOLEY IN CONNECTION WITH THE

5   INSTANT SUBPOENA.

6        THE COURT:  OKAY.  AND THIS IS ON ON A MOTION TO

7   QUASH.

8      THE COURT HAS READ THE VARIOUS MEMORANDA.  I DON'T --

9   THERE ARE SORT OF TWO ISSUES IN MY MIND, MAYBE THERE ARE MORE

10  THAN TWO, BUT THERE IS THE ISSUE OF WHETHER OR NOT THE SUBPOENA

11  IS -- THE PREDOMINANT PURPOSE OF THE SUBPOENA IS TO GATHER

12  EVIDENCE IN SUPPORT OF THE, EITHER THE INDICTMENT -- I GUESS

13  NOW THE SUPERSEDING INDICTMENT.  THE COURT RECEIVED A COPY OF

14  THAT.  I THINK IT WAS FILED ON -- WELL, EARLIER THIS WEEK.  IS

15  THAT CORRECT?

16       MR. FARNHAM:  YES.

17       MR. HEMANN:  WE RECEIVED IT YESTERDAY, YOUR HONOR.

18       THE COURT:  YEAH.  SO THAT, THAT IS A SEPARATE

19  QUESTION.  LET'S PUT THAT ASIDE FOR THE MOMENT.

20     BECAUSE THE OTHER QUESTIONS I THINK ARE PRETTY SIMPLE.

21  YOU KNOW, IT -- IF A DEFENDANT -- I'LL ASK MR. HEMANN.

22     A DEFENDANT HAS IN HIS HOUSE DOCUMENTS DEMONSTRATING THE

23  INSTRUMENTALITIES OF THE OFFENSE, OKAY?  SO HE HAS RECORDS AND

24  SO FORTH AT HIS HOUSE.  HE'S A DEFENDANT.  HE'S BEEN CHARGED.

25  OKAY?

1     COULD THE UNITED STATES ATTORNEY GET A SEARCH WARRANT?

2          MR. HEMANN:  ASSUMING ALL OF THE REQUIREMENTS FOR A

3     SEARCH WARRANT, THE U.S. ATTORNEY COULD GET A SEARCH WARRANT,

4     YES.

5          ASSUMING THAT THEY KNOW THAT THE DOCUMENT -- YOU KNOW,

6     THEY HAVE PROBABLE CAUSE TO BELIEVE THAT THE DOCUMENTS ARE IN

7     THE PLACE, ET CETERA, ET CETERA.

8          THE COURT:  WELL, I MEAN -- I'M JUST SAYING THAT THE

9     ARGUMENT ABOUT -- THAT IT'S INCRIMINATORY HAS NOTHING TO DO

10    WITH THE CASE, OBVIOUSLY.

11          MR. HEMANN:  CORRECT.

12          THE COURT:  NOTHING.

13          MR. HEMANN:  CORRECT.

14          THE COURT:  OKAY.  NOW, THEY CAN GET A SEARCH

15    WARRANT -- WHICH, BY THE WAY, IS WHAT THE U.S. ATTORNEY WANTS

16    TO DO IN THIS CASE, A SUBSEQUENT SEARCH WARRANT, AND WE'LL GET

17    TO THAT IN A MINUTE.

18          SECONDLY, LET'S SAY THE DEFENDANT WHO HAS THESE DOCUMENTS

19    TURNS THEM OVER TO HIS ATTORNEY, GIVES THEM ALL TO HIS LAWYER.

20          DOES THAT CHANGE ANYTHING?

21          MR. HEMANN:  FROM A SEARCH WARRANT PERSPECTIVE?

22          THE COURT:  YEAH.  YEAH.

23          MR. HEMANN:  FROM A SEARCH WARRANT PERSPECTIVE,

24    AGAIN, ASSUMING THAT THE GOVERNMENT CAN MEET ALL OF THE

25    REQUIREMENTS FOR A SEARCH WARRANT, PRESUMING -- AND GET

1     APPROVAL FROM THE DEPARTMENT OF JUSTICE TO GET A SEARCH WARRANT

2     OF A LAWYER'S OFFICE, THAT WOULDN'T PRECLUDE THEM FROM GETTING

3     A SEARCH WARRANT FOR THOSE DOCUMENTS.

4          THE COURT:  RIGHT.  SO IN OTHER WORDS, THEY COULD, IF

5     THEY WANTED TO, AND ASSUMING THEY COULD GET CONSENT, HAVE

6     SEARCHED THE COOLEY OFFICE WITH A SEARCH WARRANT.

7          MR. HEMANN:  ASSUMING THEY GO THROUGH ALL OF THE

8     PROCESS REQUIRED BY THE --

9          THE COURT:  I DON'T SEE WHY THEY WOULDN'T GET IT.  I

10    DON'T SEE WHY THEY WOULDN'T GET IT.

11         MR. HEMANN:  MR. --

12         THE COURT:  I KNOW THE ARGUMENT ALWAYS IS IF THEY CAN

13    GET IT.  WHAT I'M ASKING YOU --

14         MR. HEMANN:  YEAH, I DON'T THINK IT'S QUITE AS EASY

15    AS HYPOTHETICALLY IT COULD BE TO GET A SEARCH WARRANT UNDER

16    THESE CIRCUMSTANCES.

17         THE COURT:  I'M NOT ASKING A PRACTICAL QUESTION.  I'M

18    NOT ASKING YOU IS, IS IT EASY, IS IT DIFFICULT, AND SO FORTH.

19      I'M SAYING CONSTITUTIONALLY --

20         MR. HEMANN:  CONSTITUTIONALLY, THEY COULD DO THAT,

21    YES, YOUR HONOR.

22         THE COURT:  OKAY.  SO THE FACT THAT YOUR CLIENT GAVE

23    THE CELL PHONE AND THE COMPUTER TO THE ATTORNEY MEANS NOTHING

24    IN TERMS OF THE CONSTITUTIONAL ASPECTS OF WHETHER OR NOT THESE

25    DOCUMENTS CAN BE SEIZED OR DISCLOSED TO THE GOVERNMENT.  IT HAS

```
1        NO BEARING WHATSOEVER?

2              MR. HEMANN:  AS TO THE -- I DISAGREE WITH THAT.

3        AS TO THE FOURTH AMENDMENT, IT DOES NOT HAVE ANY BEARING.

4              THE COURT:  WELL --

5              MR. HEMANN:  IT HAS CONSIDERABLE BEARING TO THE FIFTH

6        AMENDMENT.

7        AND THEY'RE NOT ASKING FOR DOCUMENTS.

8              THE COURT:  OKAY.

9              MR. HEMANN:  I THINK YOUR QUESTIONS ALL WERE DIRECTED

10       TOWARDS THE ISSUE OF DOCUMENTS, AND THEY'RE NOT ASKING FOR

11       DOCUMENTS.  I MEAN, THEY WANT DOCUMENTS, CLEARLY.

12       BUT THEY'RE NOT ASKING FOR DOCUMENTS.  THEY'RE ASKING FOR

13       DEVICES THAT CONTAIN ALL SORTS OF THINGS BEYOND DOCUMENTS AND

14       THINGS THAT THEY DON'T KNOW WHETHER ARE THERE OR ARE NOT THERE.

15             THE COURT:  AND, INDEED, THERE ARE CERTAIN SAFEGUARDS

16       THAT COULD BE PUT INTO EFFECT WITH RESPECT TO DISCLOSURE OF

17       THOSE DOCUMENTS.

18       ALL I'M SAYING IS CONSTITUTIONALLY, I'M SORRY, I JUST

19       DON'T AGREE WITH YOU WHATSOEVER.  CONSTITUTIONALLY, THE FACT

20       THAT YOU GIVE A BOX OF DOCUMENTS -- I GO -- I'M A DEFENDANT.  I

21       HAVE A BANKER BOX OF DOCUMENTS OR, YOU KNOW, A -- AND I TURN IT

22       OVER TO MY LAWYER.  IT'S GOT A LOT OF DIFFERENT THINGS IN IT.

23       IT HAS COMMUNICATIONS OF THE LAWYER.  IT HAS DISCUSSIONS ABOUT

24       SOMETHING ELSE.  I DON'T KNOW.

25             BUT CONSTITUTIONALLY, IF, IN FACT -- CONSTITUTIONALLY, IT
```

1      CAN BE SEIZED IF, A, THE GOVERNMENT HAS PROBABLE -- MEETS THE

2      REQUIREMENTS OF A SEARCH WARRANT; THAT IS, DESCRIBES THE THINGS

3      WITH PARTICULARITY, WHICH YOU MAY ARGUE HASN'T BEEN DONE HERE,

4      WHICH IS PART OF YOUR ARGUMENT.

5            BUT, OF COURSE, THAT'S -- WE'RE NOT AT THE SEARCH WARRANT.

6      WE'RE NOT AT THE SEARCH WARRANT.

7                  MR. HEMANN:  I --

8                  THE COURT:  THERE WHAT THEY ARE SAYING IS THAT THEY

9      CAN REQUIRE COOLEY TO DELIVER TO THEM THE -- DELIVER TO THE FBI

10     THE CONTAINERS IN WHICH THE DOCUMENTS, THEY ARGUE, ARE

11     CONTAINED, THE BOX THAT THE DOCUMENTS ARE CONTAINED.

12                 MR. HEMANN:  THE BOX.

13                 THE COURT:  OKAY.

14                 MR. HEMANN:  THAT'S WHAT THEY'RE SAYING.  THAT IS

15     WHAT THEY'RE SAYING.

16                 THE COURT:  OKAY.  NOW, YOU RAISE -- AND, BY THE WAY,

17     THEY'RE RIGHT.

18           NOW, THE NEXT QUESTION IS, WHAT ABOUT THE FIFTH AMENDMENT

19     IMPLICATIONS?  AND THERE'S ONLY ONE, WHICH IS THE ACT OF

20     PRODUCTION, THAT I CAN SEE.  I MEAN, YOU DON'T ARGUE ANY OTHER.

21           AND SO THAT'S SOMETHING THAT, NUMBER 1, DOES HAVE TO BE

22     ADDRESSED; NUMBER 2, IT CAN BE ADDRESSED AT A SUBSEQUENT TIME,

23     BECAUSE THE QUESTION IS, DOES THE GOVERNMENT INTEND TO, TO RELY

24     ON THE FACT THAT THE DOCUMENTS WERE IN THE POSSESSION, OR THESE

25     DEVICES WERE IN THE POSSESSION -- AND THE DOCUMENTS THEY

1    CONTAIN WERE IN THE POSSESSION OF THE GOVERNMENT -- PARDON

2    ME -- WERE IN POSSESSION OF THE ATTORNEY FOR THE DEFENDANT.

3    THAT'S THE QUESTION.

4         THEY SAY, NO, WE'RE NOT GOING TO ARGUE IT.

5         WELL, THEY SAY TWO THINGS.  THEY SAY, FIRST, WE'RE NOT

6    GOING TO ARGUE IT.  WE CAN PRODUCE -- WE CAN ESTABLISH THE

7    NEXUS BETWEEN THE DOCUMENT AND THE DEFENDANT SOME OTHER WAY.

8         MAYBE THEY'RE RIGHT.  MAYBE THEY'RE WRONG.  I DON'T KNOW.

9         THEN THEY SAY, OH, AND BY THE WAY, EVEN IF WE COULDN'T,

10   WE -- THE PRIVILEGE IN A SENSE HAS BEEN WAIVED.

11        MAYBE IT HAS.  MAYBE IT HASN'T.  I DON'T KNOW.  I'M NOT

12   THERE YET.  NO ONE IS THERE YET.

13        YOU KNOW, THE WAY I UNDERSTAND THE ACT OF PRODUCTION

14   IMMUNITY IS THEY DON'T HAVE TO COME AND TELL YOU IN ADVANCE, DO

15   THEY, BY THE WAY, WE'RE IMMUNIZING YOU IN TERMS OF THE

16   PRODUCTION.  DO YOU THINK THEY HAVE TO TELL YOU THAT IN

17   ADVANCE?  I'M NOT -- I DON'T KNOW THAT THERE'S A CASE THAT SAYS

18   THAT.

19        I THINK WHAT WOULD -- AND BY THE WAY, I'M MAKING THIS UP.

20   WE ALL KNOW THAT, BECAUSE I DON'T KNOW EVERY CASE OUT THERE.

21        (LAUGHTER.)

22             THE COURT:  THERE'S A MILLION CASES SAYING A MILLION

23    DIFFERENT THINGS ON THIS.

24        BUT THE WAY I WOULD HAVE APPROACHED IT IS, IS THE -- AND I

25   MAY BE WRONG IN THIS RESPECT -- IS THAT I WOULD REQUIRE THE

1    GOVERNMENT TO ESTABLISH, PRIOR TO THE INTRODUCTION OF ANY OF

2    THESE ITEMS, IF THEY DO -- IF THEY DO THE OTHER STUFF,

3    ESTABLISH A SEPARATE, YOU KNOW, BASIS OTHER THAN THE FACT THAT

4    IT CAME FROM HIS LAWYER'S FILES, OR IF THEY SATISFY ME THAT

5    THAT PRIVILEGE HAS BEEN WAIVED IN SOME WAY.  THERE ARE OTHER

6    WAYS.

7         BUT WHAT I'M SAYING TO YOU, MR. HEMANN, IS THAT IT SEEMS

8    TO ME THAT EVERYTHING IS JUST SORT OF THROWN IN THIS POT AS IF

9    THEY ALL HAVE TO BE DECIDED AT ONE TIME WHEN THEY DON'T.  THEY

10   DON'T.  THEY CAN BE DECIDED SERIATIM.

11        AND THE FIRST THING TO BE DECIDED IS, CAN COOLEY WITHHOLD

12   THESE DEVICES?

13        NOW, WE KNOW, WE KNOW THAT THE LAW IS PRETTY CLEAR THAT,

14   THAT AN ATTORNEY HAS A PROFESSIONAL RESPONSIBILITY FOR

15   DELIVERING TO THE GOVERNMENT NOT JUST INSTRUMENTALITIES OF

16   CRIME, BUT IF THEY COME INTO -- WELL, I THINK IT IS THE

17   INSTRUMENTALITIES.

18        MR. HEMANN:  IT'S JUST THE INSTRUMENTALITIES.

19        THE COURT:  IT'S JUST THE INSTRUMENTALITIES.  BUT

20    THEY HAVE AN AFFIRMATIVE DUTY.

21        NOW, BUT THE FACT OF THE INSTRUMENTALITIES OF THE CRIME --

22   AND BY THE WAY, I HAVE NO IDEA WHAT THE MATERIALS SHOW -- BUT

23   THE FACT THAT THE INSTRUMENTALITIES OF THE CRIME ARE

24   ENCOMPASSED WITHIN A SHELL OR A CONTAINER OF A LAPTOP AND A

25   CELL PHONE DOESN'T EXCUSE AN ATTORNEY'S PROFESSIONAL

1     RESPONSIBILITY FOR DELIVERING THOSE THINGS WITHIN THAT DEVICE,

2     OR DEVICES, TO THE GOVERNMENT.  I DON'T THINK IT DOES.

3          SO I'M -- I'M EVEN -- WELL, I'M NOT GOING TO RULE ON THAT

4     BECAUSE THAT'S SORT OF LIKE A PROFESSIONAL RESPONSIBILITY, WHAT

5     IS THE DUTY OF COOLEY AND SO FORTH.  I DON'T KNOW.  YOU'RE --

6     THAT'S YOUR HEADACHE.  IT'S NOT MY HEADACHE.  I'M NOT

7     PRACTICING LAW.

8          BUT I AM -- BUT PUTTING THAT ASIDE, I THINK THAT IT'S

9     PRETTY CLEAR TO ME THAT COOLEY HAS TO DELIVER THE DEVICES TO

10    THE GOVERNMENT, AND THE GOVERNMENT THEN HAS REPRESENTED -- AND

11    I WOULD CONDITION THIS -- A SEARCH OF THOSE ITEMS PURSUANT TO A

12    SEARCH WARRANT, AND THEY HAVE TO JUSTIFY THE SEARCH WARRANT.

13         SO I KNOW -- YOU KNOW, I KNOW THAT THERE COULD BE ARGUABLY

14    ANOTHER WAY AROUND IT.  I SUPPOSE THEY COULD GET A SEARCH

15    WARRANT AND THEN GO TO COOLEY -- AND WHO'S GOING TO CONDUCT THE

16    SEARCH, BY THE WAY?  I DON'T THINK COOLEY CONDUCTS THE SEARCH.

17    I THINK THE FBI CONDUCTS THE SEARCH.

18              MR. HEMANN:  WELL --

19              THE COURT:  SO ARE WE REALLY SAYING THAT WHAT YOU

20    WANT DONE IN THIS CASE IS THE FBI TO COME TO COOLEY'S OFFICE

21    AND, AND START GOING THROUGH THE DEVICES IN ORDER TO ASCERTAIN

22    WHAT DOCUMENTS ARE, ARE SOUGHT?

23         BECAUSE THE FBI DOESN'T HAVE TO RELY ON YOU TO FIND THE

24    DOCUMENTS.  THEY CAN DO IT THEMSELVES.  RIGHT?

25         SO I WONDER -- MY POINT IS, HAVE YOU REALLY THOUGHT THIS

1    WHOLE THING OUT, YOU KNOW, WHERE IT ENDS?  BECAUSE I THINK IT

2    ENDS IN ONE OF TWO PLACES.  IT EITHER ENDS THAT THE FBI COMES

3    OVER TO THE LAW OFFICES OF COOLEY AND CONDUCTS A SEARCH THERE,

4    THAT'S ONE WAY OF DOING IT, I'M NOT QUITE SURE HOW THAT'S GOING

5    TO BE DONE; OR THAT YOU TURN OVER THE DEVICES TO THE FBI

6    SUBJECT TO A PROTECTIVE ORDER -- WELL, FIRST OF ALL, SUBJECT TO

7    A PROTECTIVE ORDER, WHICH WOULD SAY THEY CANNOT CONDUCT THE

8    SEARCH AT ALL OF THESE DEVICES, LOOK INSIDE THESE DEVICES AT

9    ALL WITHOUT A SEARCH WARRANT; TWO, GET A SEARCH WARRANT; AND

10   THEN, THREE, HAVE A SEPARATE TAINT TEAM COME THROUGH AND LOOK

11   TO SEE WHAT'S CALLED FOR.

12       THE REASON FOR THE TAINT TEAM, WHICH I THINK IS, IS

13   OBVIOUS TO ME HERE, IS THEY'RE LOOKING AT DOCUMENTS THAT ARE IN

14   THE HANDS OF THE ATTORNEY.  WE HAVE NO IDEA.  HE MAY HAVE

15   COMMUNICATIONS WITH HIS LAWYERS.  THERE MAY BE ALL SORTS OF

16   THINGS THAT WOULD BE OTHERWISE PRIVILEGED OR NOT RESPONSIVE TO

17   THE, YOU KNOW, EITHER THE GRAND JURY SUBPOENA OR THE SEARCH

18   WARRANT.

19       AND THIS IS NOT A CASE IN WHICH THERE'S EVEN THE SLIGHTEST

20   SUGGESTION THAT THE ATTORNEY WAS IN -- YOU KNOW, IS PART OF THE

21   PROBLEM HERE, PART OF THE PROBLEM.

22       THIS IS SIMPLY THAT HE WENT TO AN ATTORNEY TO GET LEGAL

23   ADVICE ABOUT THIS MATTER, SO OSTENSIBLY THERE WOULD BE

24   COMMUNICATIONS BACK AND FORTH THAT WOULD OTHERWISE BE PROTECTED

25   AND WHICH A PROSECUTOR SHOULD NOT SEE BECAUSE IT'S PROTECTED

1    AND ATTORNEY-CLIENT PRIVILEGE.

2         SO THE WAY I SORT OF CAME OUT ON ALL OF THIS, AND THEN

3    I'LL ASK YOU TO COMMENT, THE WAY I CAME OUT ON ALL THIS WAS IT

4    WOULD BE -- THE PRACTICAL WAY IS THAT COOLEY TURNS OVER THE

5    DEVICE TO THE FBI, SUBJECT TO THE PROTECTIVE ORDER; THE

6    GOVERNMENT SEEK A SEARCH WARRANT, MEETING ALL THE TESTS FOR A

7    SEARCH WARRANT; IF GRANTED, EITHER IN WHOLE OR IN PART, THAT IT

8    BE PERFORMED BY A TAINT TEAM; AND THEN SOMETHING WILL TURN UP

9    OR NOTHING WILL TURN UP.

10        AND THEN IF SOMETHING TURNS UP, THEN THE ISSUE IS, WELL,

11   HOW ARE THEY GOING TO INTRODUCE IT INTO EVIDENCE?  ARE THEY

12   RELYING ON THE FACT THAT IT CAME FROM THE ATTORNEY'S -- YOU

13   KNOW, FROM DOCUMENTS THAT WERE TURNED OVER BY THE ATTORNEY.

14        SO I THINK THAT'S, THAT'S HOW I'VE ANALYZED THE PROBLEM,

15   BECAUSE IT SEEMS TO ME THAT IF YOU'RE NOT WILLING -- IF YOU

16   THINK THAT'S WRONG, THEN I THINK YOU'VE GOT TO TELL ME HOW YOU

17   WANT TO PROCEED.

18             MR. HEMANN:  RIGHT.

19             THE COURT:  BECAUSE I DON'T KNOW.

20             MR. HEMANN:  WELL, SO I HAVE A COUPLE OF THINGS TO

21   SAY.

22             THE COURT:  YEAH.

23             MR. HEMANN:  NUMBER ONE, ON SORT OF THINKING IT ALL

24   THE WAY THROUGH, THE FBI -- PROBABLY 90 PERCENT OF THE GRAND

25   JURY SUBPOENAS THAT ARE -- THEY'RE SEARCH WARRANTS THAT ARE

1    SERVED BY THE U.S. ATTORNEY'S OFFICE GO TO GOOGLE AND YAHOO!

2    AND AT&T AND THEY'RE DELIVERED TO THE LAWYERS AT GOOGLE AND

3    YAHOO! AND AT&T AND THEY DO THE SEARCH.

4        SO IF THE GOVERNMENT GOT A SEARCH WARRANT, I ASSUME THAT

5    WE WOULD TAKE THE SEARCH WARRANT, AND IF IT WAS -- YOU KNOW,

6    SUBJECT AGAIN TO IT BEING APPROPRIATE IN ALL OF THE APPROPRIATE

7    WAYS, JUST LIKE GOOGLE DOES, WE WOULD TURN OVER THE SUBJECT --

8    WE WOULD BE REQUIRED TO TURN OVER THE, THE DOCUMENTS AND

9    RECORDS THAT ARE SUBPOENAED.

10        THE COURT:  WELL, YOU SAY THAT THE DEFENSE -- YOU SAY

11    THAT THE -- WHEN YOU SAY "THE DEFENSE," IT'S NOT REALLY THE

12    DEFENSE.  WOULD YOU SAY THAT THE, THAT THE GOVERNMENT IS

13    REQUIRED TO ALLOW THE THIRD PARTY TO CONDUCT THE SEARCH

14    PURSUANT TO THE SEARCH WARRANT?

15        MR. HEMANN:  I DON'T THINK IT'S REQUIRED, NO.

16        BUT AS A PRACTICAL MATTER, GOING TO THE PRACTICAL POINT

17    OF -- I MEAN, SEARCHES ARE EXECUTED IN ALL SORTS OF DIFFERENT

18    WAYS.

19        THE COURT:  YEAH, BUT HERE IT IS A PRETTY FINITE -- I

20    MEAN, YOU'RE NOT TALKING ABOUT GOOGLE WITH 12 BILLION

21    DOCUMENTS.

22        MR. HEMANN:  SURE.

23        THE COURT:  WE'RE TALKING ABOUT ONE LAPTOP WITH A

24    FINITE NUMBER OF DOCUMENTS.

25        MR. HEMANN:  THERE'S A PRACTICAL WAY TO DEAL WITH THE

1       EXECUTION OF A SEARCH WARRANT.  BUT I THINK THAT IS A -- I'LL

2       START WITH THE PRACTICAL POINT AND END WITH THE PRACTICAL

3       POINT.  THAT'S THE PRACTICAL POINT.

4            I THINK THAT THE, A COUPLE OF THE LEGAL POINTS ARE --

5       FIRST OF ALL, THEY'RE NOT LOOKING FOR INSTRUMENTALITIES.

6       INSTRUMENTALITIES ARE LIKE A GUN, AND I COMPLETELY AGREE WITH

7       YOUR HONOR THAT IF A DEFENDANT WALKS INTO A LAWYER'S OFFICE

8       WITH A GUN AND SAYS, HERE, LAWYER, I --

9            I'M SORRY, MY LIGHT KEEPS TURNING OFF HERE.  I'M BORROWING

10      AN OFFICE IN CLEVELAND, YOUR HONOR, AND I --

11                THE COURT:  DON'T THEY PAY THE BILL?

12                MR. HEMANN:  APPARENTLY NOT.  YOU KNOW CLEVELAND LAW

13      FIRMS.

14         (LAUGHTER.)

15                MR. HEMANN:  IN ANY EVENT, SO THEY'RE NOT LOOKING FOR

16      THE INSTRUMENTALITY.  THEY'RE NOT LOOKING FOR AN

17      INSTRUMENTALITY.  THEY'RE LOOKING FOR EVIDENCE AND THEY'RE

18      LOOKING FOR DOCUMENTS.

19           AND THEY'RE NOT LOOKING FOR THE BOX THAT THE DOCUMENTS ARE

20      IN.  THEY DON'T CARE ABOUT THE BOX.  THEY CARE ABOUT THE

21      DOCUMENTS THAT ARE IN THE BOX.

22           AND SO THIS ISN'T REALLY, I DON'T BELIEVE, AN

23      INSTRUMENTALITY SITUATION.

24                THE COURT:  WHY ISN'T INSTRUMENTALITY, FOR EXAMPLE, I

25      DRAFTED AN INCOME STATEMENT OR A REVENUE STATEMENT AND I, AND I

```
1     CHANGED THE FEE STRUCTURE OR WHATEVER I WAS GOING TO GET OUT OF

2     IT, OR THE COMPANY WAS GOING TO GET OUT OF IT, FROM 200,000 TO

3     2 MILLION, AND THEN I SAID, SEND THIS OUT.

4              MR. HEMANN:  RIGHT.

5              THE COURT:  THIS IS OUR REVENUES.

6         YOU SAY THAT'S NOT AN INSTRUMENTALITY?  I'M NOT QUITE SURE

7     WHY IT'S NOT, BUT MAYBE --

8              MR. HEMANN:  WHAT THE ISSUE IS, YOUR HONOR --

9              THE COURT:  IN A WHITE COLLAR CASE, THE DOCUMENTS ARE

10    THE GUN.  THE DOCUMENTS ARE THE INSTRUMENTALITIES.

11             MR. HEMANN:  THAT -- I WILL PROBABLY END UP QUIBBLING

12    OVER NOTHING WITH THIS.

13        BUT I THINK THE POINT IS THIS ISN'T A SITUATION IN WHICH

14    MR. LACHWANI WALKED INTO COOLEY AND HANDED COOLEY A DOCUMENT

15    AND SAID, HERE'S A DOCUMENT, I WANT YOU -- THIS IS A RELEVANT

16    DOCUMENT, TAKE THIS, AND THE GOVERNMENT SENT COOLEY A SUBPOENA

17    FOR THAT DOCUMENT.

18        WHAT THE DEFENDANT ALLEGEDLY, ACCORDING TO THE GOVERNMENT

19    HERE, DID IS WALKED INTO COOLEY AND SAID, HERE'S EVERYTHING OF

20    MINE.  HERE'S MY ELECTRONIC BRAIN.  YOU GUYS FIGURE OUT WHAT TO

21    DO WITH THIS BECAUSE YOU'RE MY LAWYERS AND I NEED YOU RIGHT NOW

22    TO BE A LAWYER FOR ME AND FIGURE OUT WHAT TO DO IN THIS

23    TERRIBLE SITUATION THAT I'M IN.

24        AND HE ENTRUSTS THE LAWYER TO THEN TAKE NOT A DOCUMENT OR

25    A PIECE OF PAPER THAT THE GOVERNMENT HAS IDENTIFIED, BUT HIS
```

1    ENTIRE ELECTRONIC BRAIN AND HAS GIVEN US THE RESPONSIBILITY TO

2    MANAGE THAT IN A WAY TO PROTECT HIS LEGAL INTERESTS.

3         AND I THINK THAT THAT IS WHERE THE FIFTH AMENDMENT COMES

4    IN AS DISTINCT FROM THE FOURTH AMENDMENT.

5         I AGREE THAT IF, IF WE GOT A SUBPOENA THAT SAID, WE WANT

6    YOU TO SEND US THESE DOCUMENTS THAT WE KNOW YOU HAVE, THAT WE

7    WOULD HAVE NO CHOICE BUT TO TURN THOSE, THE DOCUMENTS, OVER.

8         BUT THIS IS A SITUATION WHERE THEY'RE SAYING, WE KNOW THAT

9    YOU HAVE -- WE BELIEVE THAT YOU HAVE EVERYTHING IN THE

10   DEFENDANT'S POSSESSION THAT IS POTENTIALLY RELEVANT, AND FAR

11   BEYOND THAT, AND WE WANT YOU TO TURN OVER EVERYTHING TO US

12   AFTER YOU HAVE FIGURED THIS OUT.

13        THE COURT:  BUT THEY'RE -- YOU SEE, I'M NOT GOING

14   TO -- BUT, YOU SEE, I DON'T KNOW THAT YOU'RE WRONG.  I DON'T

15   KNOW THAT YOU'RE WRONG HERE.  BUT WE'RE TALKING ABOUT A

16   PRACTICAL THING.

17        SO FIRST OF ALL, IF YOU FOLLOW MY WAY I WROTE IT, THE WAY

18   I THOUGHT IT OUT IS THAT I DON'T REALLY CARE THAT MUCH, I

19   HAVEN'T TALKED TO THE GOVERNMENT, I DON'T CARE WHETHER IT SITS

20   IN YOUR FILES, THAT IS, YOU HAVE IT IN YOUR OFFICE -- HOPEFULLY

21   YOU'LL COME BACK SOME DAY FROM CLEVELAND.

22        MR. HEMANN:  I MAY.

23        THE COURT:  AND THE FBI GOES TO YOUR OFFICE WITH A

24   SEARCH WARRANT DESCRIBING WITH PARTICULARITY THAT WHICH THEY

25   WANT TO SEIZE.

```
1            ALL RIGHT, FINE.  THEY HAVE TO DO IT ANYWAY.  THEY HAVE TO

2     EITHER DO IT IN SAN FRANCISCO AT 450 GOLDEN GATE, OR -- ARE YOU

3     STILL IN THE ALCOA BUILDING?

4            MR. HEMANN:  OH, NO.  WE MOVED MANY MOONS AGO.

5     EMBARCADERO 3.

6            THE COURT:  OH, YOU'VE MOVED ACROSS THE STREET.

7     THAT'S NICE.

8            MR. HEMANN:  VERY NICE.

9            THE COURT:  HIGHER FLOOR, LOWER FLOOR?

10           MR. HEMANN:  HIGHER FLOOR.  WE KIND OF LOOK DOWN ON

11    THE OLD BUILDING.

12           THE COURT:  GREAT, A REAL SUCCESS STORY.

13        THEY GO TO YOUR OFFICE.  ACTUALLY, IF I WERE THE FBI, I

14    PREFER TO GO TO YOUR OFFICE --

15           MR. HEMANN:  ABSOLUTELY.

16           THE COURT:  -- AND GO THROUGH THEM.

17        I MEAN, IS THAT WHAT YOU WANT THEM TO DO?  I MEAN, YOU

18    DON'T WANT THEM TO DO ANYTHING.  BUT IS THAT THE COURSE?

19           MR. HEMANN:  IT IS -- IT IS -- I THINK IT IS

20    SKIPPING -- THERE'S AN IMPORTANT STEP -- THAT MAY BE THE

21    COURSE.  IF THAT IS -- IF -- THAT MAY BE THE COURSE.

22        BUT I THINK THE REASON THEY'RE DOING IT THE WAY THEY'RE

23    DOING IT IS BECAUSE THEY KNOW THEY CAN'T REALLY GET TO THE

24    SECOND STEP, AND THEY HAVE NOT SHOWN THE ABILITY TO GET TO THAT

25    SECOND STEP.
```

1           THE SECOND STEP IS VERY COMPLICATED.

2               THE COURT:  WHAT IS THE SECOND STEP?

3               MR. HEMANN:  THE SEARCH WARRANT IS THE SECOND --

4               THE COURT:  OH, OH.

5               MR. HEMANN:  -- IS THE SECOND STEP IN THEIR SITUATION

6       HERE.  THE FIRST STEP IS TO, IS TO ACTUALLY OBTAIN THE

7       COMPUTER, OR THE COMPUTERS, THAT THEY'RE LOOKING FOR.

8           AND, YOU KNOW, IT PUTS THEM -- AND THE REASON THIS IS

9       UNUSUAL IS BECAUSE, I MEAN, JUST IMAGINE THE PRACTICALITY OF

10      THIS AND IMAGINE THE PRACTICALITY FROM A LAWYER'S PERSPECTIVE

11      IN REPRESENTING AN INDIVIDUAL DEFENDANT, AS WE ARE, OR DOING AN

12      INTERNAL INVESTIGATION, AS WE OFTEN DO, AND DURING THE COURSE

13      OF THAT, WE GET EVERYBODY -- EVERYBODY GIVES UP THE PHONE.

14          WE HAVE HUNDREDS OF THESE.  YOU KNOW, WE GET THEM ALL THE

15      TIME WHEN WE DO OUR JOBS.

16          THE GOVERNMENT, TALKING ABOUT A PRACTICAL MATTER HERE, NO

17      LONGER HAS TO GET A SEARCH WARRANT.  THEY JUST WAIT UNTIL THE

18      LAWYERS DO THE THING THAT THE LAWYERS DO AND --

19              THE COURT:  BUT HE'S GOING TO GET THE SEARCH WARRANT.

20              MR. HEMANN:  -- AND SEND THE LAWYER A SUBPOENA.  HE

21      DOESN'T HAVE TO DEAL WITH THE PROBLEMS, THE PROBLEMATIC FOURTH

22      AMENDMENT ANYMORE.  THEY ONLY HAVE TO SEND A SUBPOENA TO THE

23      LAWYERS WHO HAVE DONE THEIR JOB AND COLLECTED ALL OF THESE

24      DEVICES.

25          IN YOUR AVERAGE INTERNAL INVESTIGATION, WE'RE GETTING

1    PHONES FROM ALL OF THE EXECUTIVES, ALL OF THE PHONES AND

2    LAPTOPS.  WE HAVE DOZENS OF THEM.

3         AND NOW, IF THIS IS THE WAY WE GO, THE GOVERNMENT DOESN'T

4    HAVE TO GO TO THE INDIVIDUAL EXECUTIVES, HE JUST WAITS UNTIL

5    THE LAW FIRM DOES ITS JOB AND THEN SENDS A GRAND JURY SUBPOENA

6    TO THE LAW FIRM.

7         I MEAN, MR. FARNHAM COULD SEND A GRAND JURY SUBPOENA TO

8    FENWICK FOR ALL OF THE DEVICES THAT IT DOWNLOADED.

9         AND ALL OF A SUDDEN YOU'VE GOT A SITUATION WHERE YOU HAVE

10   THE LAWYERS WHO, WHEN THEIR CLIENT WALKS IN AND SAYS, YOU KNOW,

11   I'VE GOT MY PHONE, THE LAWYER'S GOING TO SAY, WELL, HANG ON A

12   MINUTE, BECAUSE IF YOU GIVE ME THAT, THEN I'M GOING TO -- I'M

13   GOING TO GET A SUBPOENA AND I'M GOING TO HAVE TO HAND THIS

14   PHONE OVER TO THE GOVERNMENT.  I DON'T KNOW WHAT'S ON IT.  I

15   DON'T KNOW WHAT PRIVATE STUFF IS ON THIS PHONE.

16        AND BY THE WAY, THE GOVERNMENT WILL HAVE A SEARCH WARRANT,

17   BUT IN EXECUTING THE SEARCH WARRANT TO FIGURE OUT WHETHER

18   DOCUMENT A THAT IS SUBJECT TO THE PARAMETERS OF THE SEARCH

19   WARRANT IS IN THE PHONE, THEY'RE LOOKING AT ALL OF THE

20   DOCUMENTS, THE TAINT TEAM IS LOOKING AT ALL OF THE DOCUMENTS.

21        BUT IF IT FINDS EVIDENCE OF A DIFFERENT CRIME OR SOME

22   TOTALLY NEW THING, THAT'S NOW -- THEY CAN TAKE THAT EVIDENCE

23   AND THEY CAN USE IT TO PROSECUTE THE DEFENDANT OR THE

24   INDIVIDUAL FOR A WHOLE NEW THING.

25        AND I -- AND THAT STEMS THROUGH ME, THE LAWYER.  I'VE DONE

```
 1        THAT.  I'VE HANDED THEM MY CLIENT'S ELECTRONIC BRAIN --
 2              THE COURT:  OKAY.  SO YOU GIVE IT BACK TO THEM.  YOU
 3        SAY, LOOK, YOU REALIZE -- I'M JUST FOLLOWING YOU.
 4           YOU SAY, LOOK, DON'T GIVE ME THE PHONE.
 5              MR. HEMANN:  DON'T GIVE ME THE PHONE.
 6           THE COURT:  DON'T GIVE ME THE PHONE.  I'M GOING TO
 7        HAVE TO TURN IT OVER IN A SUBPOENA.  TAKE IT HOME WITH YOU.
 8           OKAY, SO HE TAKES IT HOME WITH HIM.
 9           NEXT THING IS THE GOVERNMENT THEN GETS A SEARCH WARRANT
10        FOR A TELEPHONE DESCRIBING CERTAIN THINGS THAT THEY HAVE REASON
11        TO BELIEVE WERE COMMUNICATED IN THE COURSE OF THE -- IN THE
12        COURSE OF THE ALLEGED COMMISSION OF THE OFFENSE, RELATING TO
13        THE ALLEGED COMMISSION OF THE OFFENSE.
14           THAT'S WHAT IT SAYS IN THE SEARCH WARRANT, DOCUMENTS OR
15        COMMUNICATIONS IN WHICH FINANCIAL INFORMATION WAS GIVEN WITH
16        RESPECT TO TRANSACTION A, B, C, D, AND E.
17           SO THEY GO AND THEY GET IT AND THEY SEIZE THE PHONE FROM
18        THE DEFENDANT, FROM HIS HOUSE.
19              MR. HEMANN:  IF THE DEFENDANT -- IF THE DEFENDANT
20        STILL HAS THE PHONE.
21              THE COURT:  SO IT'S ALL THE HORRORS, ALL THE HORRORS
22        THAT YOU'VE DESCRIBED ARE FULLY VISITED, SAVE AND EXCEPT THAT
23        YOU HAVEN'T BEEN AN INSTRUMENTALITY, THAT IS, THE LAW FIRM
24        HASN'T BEEN A REPOSITORY OF THAT KIND OF INFORMATION.
25              MR. HEMANN:  AND THE MOST IMPORTANT THING THAT YOU DO
```

1    IN THIS SITUATION, WHICH IS TO MAKE SURE THAT THE INFORMATION

2    IS PRESERVED SO THAT THERE'S NOT ALLEGATIONS OF OBSTRUCTION OF

3    JUSTICE, SO THAT THE SYSTEM WORKS IN AN ORDERLY FASHION AND SO

4    THAT WE ARE ABLE TO DO OUR JOBS TO DEFEND THE INDIVIDUAL --

5            THE COURT:  AND ARE YOU SUGGESTING --

6            MR. HEMANN:  -- OR TO CONDUCT THE INVESTIGATION.

7            THE COURT:  OKAY.  THEN ARE YOU SUGGESTING THAT

8    THERE'S A TRADEOFF AND THAT THE -- WHICH I DON'T THINK THIS IS

9    CORRECT -- BUT YOU SAY THAT THERE'S A TRADEOFF, THAT IN

10   EXCHANGE FOR ENSURING THAT EVIDENCE IS PRESERVED, THEREFORE,

11   THE GOVERNMENT CAN'T SECURE THE PHONE UPON WHICH THERE'S

12   EVIDENCE OF THE COMMISSION OF THE CRIME, BECAUSE TO DO SO WOULD

13   MAKE EVERY TELEPHONE SUSCEPTIBLE OF THIS TYPE OF SUBPOENA AND,

14   THEREFORE, WE DON'T WANT THAT RESULT BECAUSE IT WOULD

15   DISCOURAGE DEFENDANTS FROM TURNING OVER EVIDENCE WHICH, FOR THE

16   BENEFIT OF THE GOVERNMENT, PRESERVES THAT EVIDENCE.

17        I MEAN, I'M JUST SAYING THAT --

18            MR. HEMANN:  NO, I'M SAYING --

19            THE COURT:  I'M SAYING I UNDERSTAND WHAT YOU'RE

20   ARGUING, BUT I THINK THAT'S A FALSE EQUIVALENT.

21            MR. HEMANN:  I'M SAYING SOMETHING CLOSE TO THAT THAT

22   I THINK MAKES IT LESS OF A FALSE EQUIVALENT, BECAUSE I THINK

23   THAT YOUR HONOR IS SKIPPING THE FIFTH AMENDMENT STEP TO GET TO

24   THE FOURTH AMENDMENT STEP, AND I THINK THE ISSUE HERE IS -- AND

25   WHAT YOU SAID IN THIS PARTICULAR CASE IS, OKAY, BECAUSE YOU

1    FILED A MOTION TO QUASH, I WILL SORT OF NEGOTIATE A RESULT IN

2    WHICH YOU ARE SAYING, I'M ONLY GOING TO PRODUCE THIS IF YOU

3    JUMP THROUGH ALL THESE HOOPS THAT HAVE ALL OF THESE THINGS IN

4    IT THAT USUALLY I DON'T SEE ANY OF BECAUSE IT'S ALL DONE EX

5    PARTE BETWEEN THE GOVERNMENT AND A MAGISTRATE JUDGE.

6         AND YOUR HONOR IS SKIPPING TO THAT STEP WITHOUT FOCUSSING

7    ON THE FIRST STEP, WHICH IS THE FIFTH AMENDMENT STEP, AND

8    PUTTING THE LAWYER IN THE POSITION OF HAVING TO, YOU KNOW,

9    PRODUCE THIS ELECTRONIC BRAIN THAT IS FULL OF -- A SEARCH

10   WARRANT HAS TO HAVE PARTICULARITY.  I DON'T -- YOU KNOW, THE

11   PHONE HAS EVERYTHING IN IT, WHICH IS WHY THE GOVERNMENT WANTS

12   IT.

13         THE COURT:  OF COURSE IT DOES.  OF COURSE IT DOES.

14         AND ARGUABLY A HOUSE HAS EVERYTHING IN IT, OR HAS A LOT OF

15   THINGS IN IT, OR A BUSINESS HAS A LOT OF THINGS IN IT.  THEY GO

16   INTO BUSINESSES ALL THE TIME.  THEY GO THROUGH -- THEY GO TO

17   WAREHOUSES ALL THE TIME THAT HAS EVERYTHING, EVERYTHING IN IT.

18         MR. HEMANN:  BUT THERE'S --

19         THE COURT:  BUT IT'S DIFFERENT IN THIS CASE -- I

20   MEAN, I -- IT'S DIFFERENT BECAUSE IT IMPLICATES THE RIGHT TO

21   COUNSEL.

22         I DON'T THINK -- WHERE YOU LOSE ME IS YOUR FIFTH AMENDMENT

23   ARGUMENT, BECAUSE I DON'T -- I DON'T SEE WHY IT IS, QUOTE, MORE

24   INCRIMINATORY, LEAVING PRODUCTION ASIDE, MORE INCRIMINATORY

25   THAN SIMPLY GOING TO THE DEFENDANT'S HOUSE AND SEIZING THE

1    TELEPHONE IF YOU HAVE, IF YOU HAVE A SEARCH WARRANT, IF YOU

2    HAVE A VALID SEARCH WARRANT.

3              MR. HEMANN:  I DON'T THINK IT IS.  IT'S JUST

4    CONSTITUTIONALLY DIFFERENT.

5         THE GOVERNMENT CAN'T GO TO SOMEBODY'S DOOR AND KNOCK ON

6    THE DOOR AND SAY, PLEASE GIVE ME YOUR PHONE.

7              THE COURT:  RIGHT.

8              MR. HEMANN:  THEY NEED -- THEY NEED -- AND THAT'S THE

9    POINT -- IT'S THE COMPELLED POINT, AND THEY ARE COMPELLING

10   MR. LACHWANI, THROUGH HIS LAWYERS, TO DO SOMETHING AFFIRMATIVE.

11        THEY MAY BE ABLE TO GET THIS THROUGH THEIR OWN -- THROUGH

12   GOVERNMENT ACTIONS, THROUGH THE GOVERNMENT SAYING, I DEMAND --

13   YOU KNOW, I REQUIRE YOU TO LET US COME IN AND LOOK AROUND AND

14   SEIZE STUFF.

15             THE COURT:  SURE, A SEARCH WARRANT.

16             MR. HEMANN:  THEY MAY BE ABLE TO GET THAT.

17        BUT IT'S NOT REQUIRING MR. LACHWANI OR HIS LAWYERS TO DO

18   SOMETHING AFFIRMATIVE TO HELP THEM --

19             THE COURT:  OH, I SEE.

20             MR. HEMANN:  -- MAKE THEIR GAME.

21             THE COURT:  SO YOU'RE SAYING --

22             MR. HEMANN:  SO THEY'RE MAKING ME HELP THEM WIN THEIR

23   CASE, THEY THINK, AGAINST MR. LACHWANI.

24             THE COURT:  THAT'S WHY I STARTED THIS CONVERSATION BY

25   ASKING YOU, COULD THEY GO IN AND CONDUCT A SEARCH, IF WE HAVE A

1      SEARCH WARRANT, OF MR. LACHWANI'S HOUSE?  TO WHICH YOU SAID

2      YES.

3          THEN I ASKED YOU, DOES IT MAKE ANY DIFFERENCE THAT WHAT

4      MR. LACHWANI DID WAS TAKE THOSE THINGS WHICH WERE GOING TO BE

5      SEARCHED AND GIVE THEM TO HIS LAWYER?  DOES THAT MAKE ANY

6      DIFFERENCE?

7          I THOUGHT -- I'M NOT GOING TO SAY WHAT YOU SAID.  I'LL

8      TELL YOU WHAT I SAID.  IT MAKES NO DIFFERENCE.  THAT'S WHAT I

9      SAID.

10         NOW, IF YOU THINK IT MAKES -- AND ALL I HEAR YOU SAYING TO

11     ME IS IT DOES MAKE A DIFFERENCE BECAUSE SOMEHOW LAWYERS ARE

12     BEING ROPED INTO INCRIMINATING THEIR CLIENTS.

13         AND I ACTUALLY DON'T SEE THAT, BECAUSE THAT ARGUMENT SAYS

14     TOO MUCH.  YOU MAKE TOO -- IT SAYS TOO MUCH.  IT SAYS I CAN --

15     I'VE GOT SOME INCRIMINATING DOCUMENTS, HERE, TAKE IT.  TAKE IT.

16         AND THEN NOW, OH, A HOST OF OTHER CONSIDERATIONS COME INTO

17     EFFECT BECAUSE THE LAWYER THEN IS FORCED TO TURN OVER

18     SOMETHING.

19         YOU KNOW, IT'S -- LAWYERS ARE GREAT.  I KNOW SOME.  YOU

20     KNOW, I USED TO BE ONE.

21         BUT I DON'T KNOW THAT THEY CAN BECOME -- IF THEY ARE

22     RECEIVERS OF EVIDENTIARY MATERIAL WHICH COULD BE SEIZED BY THE

23     GOVERNMENT PURSUANT TO A LEGITIMATE SEARCH WARRANT, I THINK

24     IT'S IRRELEVANT THAT IT'S A LAWYER THAT GETS IT, EVEN THOUGH

25     THERE ARE IMPLICATIONS PROVIDED THAT, BECAUSE IT IS A LAWYER,

1    YOU INSTITUTE A TAINT TEAM TO GO THROUGH DOCUMENTS TO ENSURE

2    THAT, ASSUMING THEY DO THEIR JOB, TO ENSURE THAT THERE IS NO

3    VIOLATION OF THE ATTORNEY-CLIENT PRIVILEGE.

4         NOW, I DON'T KNOW ANY WAY OTHER -- I DON'T KNOW HOW I CAN

5    ANSWER YOUR QUESTION ABOUT DOESN'T IT IMPLICATE THE LAWYER IN

6    THE FIFTH AMENDMENT ISSUE BECAUSE, OF COURSE, IN A SENSE IT

7    DOES.  THAT WAS A CHOICE THAT THE DEFENDANT MADE WHEN HE

8    ACCEDED TO YOUR REQUEST TO EXAMINE THE DOCUMENTS.

9         ONCE YOU TOOK POSSESSION OF SOMETHING THAT IS POTENTIALLY

10   SEIZABLE BY A LEGITIMATE SEARCH WARRANT, THAT'S -- IN MY VIEW,

11   IF THERE IS A FIFTH AMENDMENT PRIVILEGE AS TO THAT, IT'S

12   WAIVED.

13            MR. HEMANN:  AND I THINK THE ONLY PLACE THAT -- I

14   THINK THE KEY PLACE THAT, THAT WE DISAGREE IS THAT THE -- IT'S

15   THAT WE CAN BE COMPELLED PURSUANT TO A SEARCH WARRANT.  I --

16   WE -- THE SEARCH WARRANT --

17            THE COURT:  HOWEVER -- BY THE WAY, HOW ELSE WOULD WE

18   GET IT?  LET'S TAKE THAT STEP.

19            MR. HEMANN:  THAT'S THE --

20            THE COURT:  LET'S TAKE THAT STATEMENT.  LET'S TAKE

21   THAT STATEMENT.  YOU DON'T LIKE TO BE COMPELLED BECAUSE IT'S A

22   SEARCH WARRANT.  LET'S SAY, GUESS WHAT, WE END THE HEARING

23   TODAY, NOTHING -- I, LET'S SAY, QUASH THE SUBPOENA, QUASH THE

24   SUBPOENA.  AND THE NEXT SET THEY SAY, OH, SUBPOENA QUASHED,

25   WE'RE GOING TO GET A SEARCH WARRANT.

1               MR. HEMANN:  OKAY.

2               THE COURT:  OKAY.  THEY SAY, WE'RE GOING TO GET A

3     SEARCH WARRANT.

4          SO THEY GO TO YOUR -- THEY HAVE A SEARCH WARRANT.  IF THEY

5     GET IT, THEY HAVE A SEARCH WARRANT, THEY GO TO YOUR OFFICES.

6               MR. HEMANN:  OKAY.

7               THE COURT:  THEY GO TO YOUR OFFICE AND GO SEARCHING?

8     THAT'S WHAT YOU WANT THEM TO DO?

9               MR. HEMANN:  I -- IF THAT'S WHAT -- IF THE DUTY JUDGE

10    SIGNS OFF ON THAT, THEN THAT'S -- IF THE DUTY JUDGE SIGNS OFF

11    ON THAT, IF THEY CAN PULL THAT OFF.

12              THE COURT:  WELL, NO.  IS THAT LEGAL?

13              MR. HEMANN:  IF THEY GET A SEARCH WARRANT AND THE

14    AFFIDAVIT IS --

15              THE COURT:  OH, SO THERE ISN'T A FIFTH AMENDMENT --

16              MR. HEMANN:  THERE IS --

17              THE COURT:  THERE IS NOT A FIFTH AMENDMENT PRIVILEGE.

18    SO THERE'S NOT -- THAT'S NOT AN ISSUE.

19              MR. HEMANN:  BECAUSE YOU'RE NOT COMPELLING

20    MR. LACHWANI, THROUGH HIS LAWYER, TO DO ANYTHING.  THE LAWYER

21    THEN IS, IS -- AND I THINK THIS IS THE DISTINCTION BETWEEN THE

22    FOURTH AMENDMENT AND THE FIFTH AMENDMENT.

23         YOU CAN GO INTO -- YOU CAN GET A WARRANT TO GO INTO

24    MR. LACHWANI'S HOUSE AND SEIZE A PHONE FOR SURE.  OR YOU CAN.

25    THEY CAN'T.

```
 1              YOU CANNOT GET -- YOU CANNOT GO INTO MR. LACHWANI'S HOUSE

 2      AND SAY, MR. LACHWANI, GO FIND YOUR PHONE AND HAND IT TO ME.

 3              THE COURT:  RIGHT.

 4              MR. HEMANN:  YOU CAN'T DO THAT.  THAT'S THE POINT OF

 5      THE FIFTH AMENDMENT --

 6              THE COURT:  I AGREE WITH THAT.

 7              MR. HEMANN:  -- IS THAT YOU CAN'T DO THAT.

 8          THAT'S WHAT THEY'RE ASKING HERE IS YOU, MR. LACHWANI'S

 9      AGENT, YOU TAKE --

10              THE COURT:  YOUR ANSWER IS, WELL, MAYBE WE'RE

11      CLEARLY -- MAYBE, IN OTHER WORDS, I WOULD TURN TO THE

12      GOVERNMENT AND SAY, YOU KNOW WHAT?  GO GET YOUR SEARCH WARRANT.

13      GO GET YOUR SEARCH WARRANT.

14          BUT I WILL CONDITION -- MAYBE THAT'S A MUCH BETTER WAY OF

15      DOING IT.  I WILL CONDITION THE SEARCH ON A REPRESENTATION THAT

16      IT'LL BE HANDLED BY A TAINT TEAM.

17          AND YOU'RE REPRESENTING TO ME THAT YOU WILL KEEP THE, THE

18      TELEPHONE AND THE WHOZAMAGUZITS, THE LAPTOP, THAT YOU WILL BE

19      AVAILABLE AND YOU WILL BE AMENABLE TO SERVICE THE PROCESS OF A

20      SEARCH WARRANT, AND THAT THESE DOCUMENTS, THESE ITEMS WILL BE

21      WITHIN YOUR POSSESSION AND CONTROL.

22              MR. HEMANN:  I'M NOT -- I CAN'T GO THAT FAR TO ANY OF

23      THAT.

24              THE COURT:  YOUR LAW OFFICE.  I MEAN, IT'S NOT GOING

25      TO BE SHIPPED TO COOLEY IN, IN BOHOCUS.
```

1          MR. HEMANN:  NO, NO.  IT'S -- THERE WON'T BE SHIPPING

2     OF ANYTHING.  THERE WILL BE NO SHIPPING OF ANYTHING, OF

3     ANYTHING ANYWHERE.

4          YOU KNOW, AND --

5          THE COURT:  AND IT WILL REMAIN, IT WILL REMAIN IN

6     YOUR POSSESSION.  IN OTHER WORDS, YOU WON'T RETURN IT TO THE

7     CLIENT.

8          MR. HEMANN:  WELL, OF COURSE NOT.

9          THE -- NOW, I DO NOT AGREE, JUST AS A FACTUAL MATTER, WITH

10    ALL OF THE REPRESENTATIONS THAT WERE MADE BY THE GOVERNMENT

11    ABOUT WHERE THE DOCUMENT -- WHERE ALL OF THIS IS NOW, BECAUSE

12    NEEDLESS TO SAY, YOUR HONOR, I DID NOT MAKE A FORENSIC IMAGE OF

13    THESE DOCUMENTS.  I DON'T KNOW HOW TO DO THAT.  NONE OF THE

14    LAWYERS HERE KNOW HOW TO MAKE A FORENSIC IMAGE OF DOCUMENTS.

15         WE MADE SOME CHOICES, LAWYER CHOICES, ABOUT WHAT TO DO,

16    APPROPRIATE, LEGAL, WELL THOUGHT OUT LAWYER CHOICES ABOUT WHAT

17    TO DO AND HOW TO MAKE FORENSIC IMAGES AND WHAT -- AND WHERE TO

18    PUT THEM, BECAUSE THEY'RE ON GIANT SERVERS, YOU KNOW,

19    INTERMIXED WITH ALL SORTS OF OTHER FORENSIC IMAGES FROM ALL

20    SORTS OF OTHER CLIENTS AND PEOPLE AND CUSTOMERS OF THE FORENSIC

21    IMAGE PEOPLE.

22         SO IF THE GOVERNMENT HAS MADE THIS SEEM LIKE THIS IS A

23    VERY SORT OF SIMPLE THING THAT, YOU KNOW, LAWYERS CAN TAKE

24    AND -- LIKE I SIT AROUND AT MY DESK AND READ, YOU KNOW,

25    MR. LACHWANI'S EMAILS.

1    THAT'S NOT WHAT HAPPENS.  IT'S A COMPLICATED, VERY FINELY

2    TUNED, DEVELOPED OVER MANY YEARS SO THAT WE DO IT THE RIGHT WAY

3    PROCESS THAT IS DESIGNED ENTIRELY TO MAKE SURE THAT

4    MR. LACHWANI HAS AN APPROPRIATE LEGAL DEFENSE.

5         THE COURT:  OKAY.  SO NOW LET ME ASK YOU --

6         MR. HEMANN:  AND THERE'S NO HARM --

7         THE COURT:  NOW LET ME ASK THIS, BECAUSE MAYBE I CAN

8    CUT THROUGH SOME OF THIS, MAYBE, WITHOUT NECESSARILY

9    ACKNOWLEDGING THE CORRECTNESS OF YOUR ARGUMENT, BUT OBVIATING

10    THE NECESSITY OF RULING ON YOUR ARGUMENT.

11         MR. FARNHAM, IF I WERE TO SAY TO YOU -- IF I WERE TO SAY

12    TO YOU, LOOK, THE LAPTOP AND THE TELEPHONE WILL REMAIN IN THE

13    CUSTODY AND CONTROL OF COOLEY.  IT WILL BE -- IT WILL BE -- IF,

14    IN FACT, YOU OBTAIN A SEARCH WARRANT DESCRIBING UNDER THE

15    REQUISITES OF A SEARCH WARRANT THAT WHICH IS TO BE SEIZED WITH

16    PARTICULARITY AND YOU WILL EXECUTE THAT SEARCH WARRANT WITH A

17    TAINT TEAM, ANYTHING WRONG WITH THAT?

18         I JUST THINK THAT MOVES THE SITUS, THAT RATHER THAN HAVE

19    IT BE AT 450 GOLDEN GATE, IT BE AT 3 EMBARCADERO.

20         MR. FARNHAM:  YOUR HONOR, I'M GOING TO LET MR. STERN

21    HANDLE THE ARGUMENT ON THIS.

22         THE COURT:  LET'S DO ONE AT A TIME.  THAT'S WHAT I

23    WANT TO GET THE GOVERNMENT'S VIEW ON THAT.

24         MR. STERN:  YOUR HONOR, WE COULD ABSOLUTELY GET --

25         THE COURT:  OH, MR. STERN.  YOU'RE HANDLING THIS.

1          MR. STERN:  YES.

2          YOUR HONOR, WE COULD ABSOLUTELY GET A SEARCH WARRANT TO

3     OBTAIN THESE DEVICES.

4          I THINK THAT WHAT THE GOVERNMENT DID HERE WAS TO TRY TO

5     TAKE A LESS INTRUSIVE TACT --

6          THE COURT:  I AGREE WITH THAT.

7          MR. STERN:  -- AND I THINK IT'S PRETTY CLEAR WHAT

8     COOLEY IS DOING HERE IS TRYING TO, YOU KNOW, PREVENT THE

9     GOVERNMENT TO GET ACCESS TO THIS EVIDENCE.

10         I THINK, YOU KNOW, MR. HEMANN SAID --

11         THE COURT:  THEY'RE TRYING TO PREVENT YOU FROM

12    GETTING ACCESS, THEY ARGUE, TO THINGS THAT YOU WOULD NOT

13    NECESSARILY -- YOU WOULD NOT BE ENTITLED TO BY VIRTUE OF A, OF

14    A SEARCH WARRANT.

15         I MEAN, YOU SEE, IT IS A LITTLE -- THE GAP, THE AREA THAT

16    YOU DON'T GET IS IF, IN FACT, THIS REMAINED IN THE CUSTODY OF

17    THE DEFENDANT -- SEE, THIS IS WHAT I'M A LITTLE CONFUSED ABOUT

18    IN MY MIND.  IF IT REMAINED IN THE CUSTODY OF THE DEFENDANT AND

19    YOU WENT IN WITH A SEARCH WARRANT TO SEIZE HIS TELEPHONE WHICH

20    WAS USED AND YOU HAD REASON TO BELIEVE, BLAH, BLAH, BLAH, TO

21    COMMIT THE CRIME, YOU WOULD GET HIS TELEPHONE WITH EVERYTHING

22    ON IT.

23         NOW, THAT WOULD SHOW THOSE THINGS WHICH YOU COULD SEIZE

24    WITH PARTICULARITY AND THOSE THINGS WHICH YOU COULDN'T BECAUSE

25    YOU DIDN'T EVEN KNOW ABOUT THEM.  HE TALKS ABOUT, AS AN

1    EXAMPLE, CRIME X UNRELATED TO CRIME Y.  CRIME X, WHICH THE

2    GOVERNMENT SAYS, OH, HO, YOU WERE INVOLVED IN THIS, AND NOW IT

3    BRINGS NEW CHARGES BASED UPON WHAT THEY SAW AND SAY IT WAS

4    ESSENTIALLY IN PLAIN SIGHT, THAT IS TO SAY, IT WAS IN THE BOX

5    OF DOCUMENTS THAT WERE SEIZED.

6         THEY DON'T WANT YOU TO HAVE THAT.

7         AND THEY'RE NOT SAYING, BY THE WAY, THAT OTHER OFFENSES

8    WERE COMMITTED.  I UNDERSTAND THAT.

9         BUT THEY'RE SAYING YOU SHOULDN'T EVEN BE ABLE TO LOOK TO

10   SEE WHETHER THERE WERE OTHER OFFENSES COMMITTED.  YOU SHOULD BE

11   LIMITED BY THE PARAMETERS OF A SEARCH WARRANT, THAT IS, WITH

12   PARTICULARITY.

13        SO, MR. STERN, I'M ASKING YOU, IS THAT A DIFFICULT

14   OBSTACLE?

15            MR. STERN:  NO, YOUR HONOR.

16        I MEAN, THE SEARCH THAT'S GOING TO BE CONDUCTED IS GOING

17   TO BE THE SAME IN EITHER CASE.  IF THE GOVERNMENT OBTAINED A

18   SEARCH WARRANT TO GO THROUGH COOLEY'S OFFICES AND GET THE

19   DEVICES, THE SEARCH WOULD BE PURSUANT TO ATTACHMENT B AND C OF

20   THE SEARCH WARRANT.

21        AND IF THE COURT ORDERS THAT COOLEY COMPLY WITH THE

22   SUBPOENA AND THE GOVERNMENT OBTAINS A SEARCH WARRANT FOR THOSE

23   DEVICES, IT'S GOING TO BE PURSUANT TO THE SAME, ESSENTIALLY THE

24   SAME ATTACHMENTS B AND C.

25        SO, YOU KNOW, THOSE REQUIREMENTS ARE WELL LAID OUT IN THE

1    SEARCH WARRANTS THAT ARE OBTAINED BY THE GOVERNMENT.

2         AND SO, I MEAN, THE QUESTION HERE IS WHETHER THERE'S A

3    BASIS TO QUASH THE SUBPOENA.

4         AND I DISAGREE WITH SOMETHING MR. HEMANN SAID.  MR. HEMANN

5    SAID THAT THE GOVERNMENT CAN'T GO TO MR. LACHWANI'S DOOR WITH A

6    SUBPOENA FOR HIS PHONE, AND THAT MIGHT BE TRUE IF THE

7    GOVERNMENT DOESN'T KNOW IF HE HAS A PHONE, BECAUSE IN THAT

8    CASE, HIS ACT OF PRODUCTION IS PROVIDING SOME IMPLIED

9    TESTIMONY, THE FACT THAT THIS ITEM EXISTS THAT THE GOVERNMENT

10   DIDN'T KNOW THAT IT EXISTS, THE FACT THAT IT IS THE ITEM AND

11   THAT IT'S AUTHENTIC.

12        AND HERE -- SO IN THAT EXAMPLE, IF THE GOVERNMENT KNEW

13   THAT HE HAD A PHONE AND KNEW THAT HE POSSESSED IT, THE

14   GOVERNMENT ABSOLUTELY COULD GO TO HIS DOOR, SERVE HIM WITH A

15   SUBPOENA, AND COMPEL HIM TO SURRENDER THAT PHONE.  IT'S NOT A

16   QUESTION OF DISCOVERY, IT'S A QUESTION OF COMPULSION.

17        AND SO THAT, THAT IS THE SITUATION HERE.  COOLEY HAS TRIED

18   TO MAKE THIS ARGUMENT THAT SOMEHOW, BECAUSE THE GOVERNMENT

19   DOESN'T KNOW THE SPECIFIC DOCUMENTS ON THE PHONE, THERE'S SOME

20   FIFTH AMENDMENT ASPECT OF THAT, THAT THERE'S SOME

21   REPRESENTATION ABOUT WHAT DOCUMENTS ARE ON THE PHONE.

22        BUT THAT'S EXACTLY THE ARGUMENT THAT THIS COURT REJECTED

23   IN THE SPENCER CASE WHERE THE GOVERNMENT WAS SUBPOENAING A

24   DEVICE.

25        THE ONLY -- THE ONLY POTENTIAL IMPLIED TESTIMONY FROM

1    COOLEY'S PRODUCTION OF THOSE DEVICES IS THAT THEY EXIST, THAT

2    THEY'RE IN COOLEY'S POSSESSION, AND THAT IT IS WHAT IT IS.

3         BUT THE GOVERNMENT ALREADY KNOWS ALL OF THAT INFORMATION.

4         AND THERE'S NO -- THAT REPRESENTATION IS THE SAME

5    REGARDLESS OF WHAT DOCUMENTS ARE ON OR ARE NOT ON THE DEVICE.

6         SO SIMPLY PUT, THERE'S JUST -- THERE'S -- COOLEY'S

7    PRODUCING THOSE DEVICES IS NOT PROVIDING THE GOVERNMENT ANY

8    TESTIMONY THAT IT NEEDS TO INTRODUCE DOCUMENTS FOUND ON THOSE

9    DEVICES AT TRIAL, AND BECAUSE OF THAT, THERE'S REALLY NO

10   TESTIMONY AND THERE'S NO, THERE'S NOTHING INCRIMINATING.

11        AND THAT'S THE ONLY FIFTH AMENDMENT ARGUMENT THAT COOLEY

12   HAS.

13        MR. HEMANN:  JUST TO RESPOND TO THAT BRIEFLY, YOUR

14   HONOR, THE GOVERNMENT'S LOOKING FOR MORE THAN JUST -- AGAIN,

15   MR. STERN MAKES IT SOUND LIKE THEY'RE LOOKING FOR DOCUMENTS

16   THAT THEY KNOW EXIST.

17        BUT THAT'S WELL BEYOND WHAT THEY SAID THAT THEY'RE LOOKING

18   FOR.

19        AND THEY SAID THAT THEY WILL HAVE THE FBI GO IN AND LOOK

20   AT THE DOCUMENTS AND LOOK AT THE METADATA AROUND DOCUMENTS,

21   THEY'LL LOOK TO SEE WHETHER DOCUMENTS WERE DELETED.  THEY HAVE

22   NO REASON TO BELIEVE THAT DOCUMENTS WERE DELETED.

23        BUT IF THEY HAVE -- LET'S SAY THEY HAVE A PIECE OF PAPER

24   RIGHT NOW THAT PURPORTS TO BE AN EMAIL FROM MR. LACHWANI TO

25   JOE SMITH, AND THEN THEY LOOK ON THE DEVICE THAT WE PRODUCED TO

1    THEM AND IT'S NOT THERE AND THEY SAY -- WELL, THEN AT TRIAL

2    THEY'RE SAYING, WELL, MR. LACHWANI DELETED --

3              THE COURT:  YEAH.

4              MR. HEMANN:  -- IT FROM THE DEVICE.

5              THE COURT:  YEAH.  BUT THAT --

6              MR. HEMANN:  THAT'S COMPELLED TESTIMONY.

7              THE COURT:  THAT'S CERTAINLY EVIDENTIARY.  THAT

8    CERTAINLY HAS A VALUE.

9              MR. HEMANN:  IT IS EVIDENTIARY.

10             THE COURT:  AND IT'S PART OF HIS RECORDS AND IT MAY

11   SHOW CONSCIOUSNESS OF GUILT AND IT MAY DO ANY NUMBER OF THINGS

12   WITH RESPECT TO THE ASPECTS OF THE --

13             MR. HEMANN:  AND THE --

14             THE COURT:  BUT WHY WOULDN'T THEY BE ENTITLED TO

15   THAT?  I'M TRYING TO FIGURE OUT WHY GIVING IT TO THE LAWYER,

16   THEY'RE SOMEHOW NOT ENTITLED TO THAT.

17             MR. HEMANN:  BUT IT'S GIVING IT -- BECAUSE

18   MR. LACHWANI -- AND MR. STERN SAID SOMETHING THAT I DON'T THINK

19   IS CORRECT.

20             THE COURT:  WHAT?

21             MR. HEMANN:  WHICH IS THAT THE PRODUCTION OF THE

22   PHONE, OF THE ELECTRONIC BRAIN IN THE MOMENT THAT IT'S HANDED

23   OVER IS -- THEY DON'T -- BECAUSE THEY DON'T KNOW WHAT IS IN IT

24   AND WHAT IS NOT IN IT.

25             THE COURT:  THEY DON'T KNOW -- WHEN THEY'RE OUTSIDE

1    THE HOUSE, THEY'RE NOT CERTAIN WHAT DOCUMENTS ARE INSIDE THE

2    HOUSE.

3            MR. HEMANN:  BUT THAT'S A FOURTH AMENDMENT ISSUE, NOT

4    A FIFTH AMENDMENT ISSUE.

5            THE COURT:  PARDON?

6            MR. HEMANN:  THAT'S A FOURTH AMENDMENT ISSUE, NOT A

7    FIFTH AMENDMENT ISSUE.

8            THE COURT:  BUT THE FIFTH AMENDMENT ISSUE IS --

9            MR. HEMANN:  IT'S MAKING MR. LACHWANI PARTICIPATE IN

10   THE CASE AGAINST HIM.

11           THE COURT:  THE PROBLEM -- THE PROBLEM IS THAT OF

12   COURSE THEY'RE LOOKING FOR DOCUMENTS WHICH ARE INCRIMINATORY.

13           MR. HEMANN:  OF COURSE THEY ARE.

14           THE COURT:  AND THE FACT THAT THOSE DOCUMENTS ARE

15   INCRIMINATORY, THEY ARE -- THE PROCESS ITSELF IS COMPELLING THE

16   DEFENDANT TO OFFER UP, MAKE AVAILABLE THE DOCUMENTS WHICH ARE

17   INCRIMINATORY.

18       NOW, DOES IT -- AS I SAID IN THE BEGINNING, THEY COME TO

19   THE HOUSE AND THEY HAVE A SEARCH WARRANT, AND IF THE DOCUMENTS

20   ARE THERE, NO FIFTH AMENDMENT PRIVILEGE.

21       THEY GIVE THE DOCUMENTS TO THE LAWYER, AH, NOW IT'S A

22   FIFTH AMENDMENT PRIVILEGE.

23           I MEAN, I THINK I'M NOT UNDERSTANDING THAT.

24           MR. STERN:  BUT, YOUR HONOR --

25           MR. HEMANN:  THE ONLY -- GO AHEAD.

1          MR. STERN:  THE PRODUCTION OF THAT --

2          THE COURT:  GO AHEAD.

3          MR. STERN:  THE PRODUCTION OF THAT DEVICE DOESN'T

4    MAKE ANY TESTIMONIAL REPRESENTATION ABOUT THE DOCUMENT THAT'S

5    NOT ON THE COMPUTER OR THAT IS.  IT SIMPLY DOESN'T CONTAIN ANY

6    TESTIMONY ABOUT THAT.

7          THE COURT:  WELL, THE ANSWER IS COULDN'T -- IT MAY OR

8    MAY NOT.  I UNDERSTAND THAT.

9          BUT THAT'S FOR ANOTHER DAY.  THAT'S WHAT I KEEP SAYING.

10   THAT'S FOR ANOTHER DAY.  THAT'S FOR ANOTHER DAY.

11         ARE YOU GOING TO -- THAT'S FOR THE GOVERNMENT, IF THEY'RE

12   GOING TO INTEND TO INTRODUCE IT, THEN THEY HAVE TO DEAL WITH

13   WHETHER THEY CAN DO SO INDEPENDENT OF THE FACT THAT HE GAVE IT

14   TO HIS LAWYERS.

15         WELL, HERE'S -- HERE'S -- YOU KNOW, THIS IS A GREAT

16   CONVERSATION.  I MEAN, I'M ACTUALLY FINDING IT INTERESTING.

17   MAYBE NOBODY ELSE IS.

18         BUT IT SEEMS TO ME THAT THE WAY TO GO AT THIS POINT IS I'M

19   NOT GOING TO RULE ON THE SUBPOENA RIGHT NOW.  THE GOVERNMENT

20   SHOULD -- IN ANY EVENT, THE GOVERNMENT SHOULD DRAW UP ITS, ITS

21   SEARCH WARRANT, AFFIDAVIT FOR A SEARCH WARRANT, AND SUBMIT IT

22   TO THE COURT AND THE COURT WILL CONSIDER IT.

23         I DON'T SEE ANY REASON TO GET A MAGISTRATE JUDGE INVOLVED

24   IN THIS.  I DON'T KNOW HOW THAT WOULD HELP ANYTHING.  OF

25   COURSE, THEY MAY BE MORE CORRECT THAN I WOULD BE, BUT BE THAT

1     AS IT MAY.

2          I'LL TAKE A LOOK AT IT AND THEN I'LL FIGURE OUT WHETHER

3     THIS PROCESS -- WHETHER OR NOT -- IN THE EVENT WE HAVE THE

4     SEARCH WARRANT, ASSUMING I SIGN THE SEARCH WARRANT, THEN THE

5     QUESTION IS WHETHER I ALSO REQUIRE COOLEY TO TURN OVER THE

6     DEVICES TO THE GOVERNMENT.

7          I CAN MAKE THAT DECISION A LITTLE LATER ON.

8               MR. HEMANN:  FAIR ENOUGH, YOUR HONOR.

9               THE COURT:  IS THAT OKAY, MR. FARNHAM?  ARE YOU ON

10    BOARD WITH THIS?  MR. STERN?  YOU GUYS LOOK SO HAPPY.

11              MR. FARNHAM:  I THINK THAT -- I THINK THAT IT'S,

12    IT'S -- I'M JUST TRYING TO KEEP A STRAIGHT FACE.

13         I THINK THAT THAT MAKES SENSE, YOUR HONOR.

14         AND YOUR PROPOSAL IS THAT IT BE SUBMITTED TO YOU AND NOT A

15    MAGISTRATE FOR YOU TO RULE ON ALL THE SAME ISSUES, SUCH AS

16    PROBABLE CAUSE?

17              THE COURT:  THAT'S RIGHT.

18              MR. FARNHAM:  AND, I MEAN, LOOK, THAT'S FINE.

19         AND LIKE MR. STERN SAID, THE SEARCH FOR THE PROBABLE CAUSE

20    WILL BE SIMILAR REGARDLESS OF THE FORUM, WHETHER IT'S A WARRANT

21    FOR DEVICES WE HAVE IN OUR POSSESSION ALREADY OR IT'S A WARRANT

22    FOR DEVICES THAT COOLEY HAS IN ITS POSSESSION.  THE AFFIDAVIT

23    WILL BE SIMILAR, THE ATTACHMENTS WILL BE SIMILAR, THE THINGS

24    THAT WE'RE LOOKING TO SEARCH FOR AND SEIZE WILL BE SIMILAR.

25         I MEAN, AT THE END OF THE DAY HERE, WHAT WE'RE REALLY

```
1      TRYING TO DO IS NOT TURN OVER COOLEY'S OFFICE.  WE WANTED THEM

2      TO BRING IT TO THE DOOR.

3                  THE COURT:  I KNOW YOU DO.  I UNDERSTAND THAT.

4            BUT I'M TRYING TO DEAL WITH WHETHER -- I'M TRYING TO SEE

5      WHETHER THERE'S -- YOU KNOW, NOBODY WANTS YOU TO GO THROUGH A

6      LAWYER'S OFFICE.  I MEAN, YOU DON'T WANT TO GO THROUGH A

7      LAWYER'S OFFICE.  PEOPLE WILL FAINT.  THEY'LL HIDE FROM YOU.

8                  MR. FARNHAM:  WELL, BASED ON --

9                  THE COURT:  THEY'LL HIDE THEIR BILLABLE RATES BECAUSE

10     IT'S THIEVERY.  THEY'LL DO ALL SORTS OF THINGS.

11                 MR. HEMANN:  THERE'S ALMOST NOBODY UNDER THE AGE OF

12     40 AT COOLEY'S OFFICE RIGHT NOW, SO IT'S --

13                 THE COURT:  AND THE OFFICE IS PROBABLY A GHOST SHIP.

14                 MR. FARNHAM:  MR. HEMANN IS SUGGESTING WE NEED TO GO

15     THROUGH THE SERVERS AS WELL, WHICH IS PROBABLY TRUE BECAUSE THE

16     DEVICES ARE STORED REMOTELY.

17                 THE COURT:  I'M NOT HERE NEGOTIATING.

18                 MR. FARNHAM:  IT'S A --

19                 THE COURT:  YOU PUT IN WHATEVER YOU WANT TO SEARCH.

20                 MR. FARNHAM:  AND, YOUR HONOR, DO WE HAVE A

21     REPRESENTATION THAT THE DEVICES ARE AT COOLEY'S OFFICE IN

22     SAN FRANCISCO?

23                 THE COURT:  YES, YOU DO.

24           RIGHT?

25                 MR. HEMANN:  NO, WE DO NOT.
```

```
 1                    THE COURT:  I'M SORRY.  WHAT IS -- WHERE ARE THE

 2       DEVICES?

 3                    MR. HEMANN:  THEY'RE IN -- I THINK THE WORDS THAT I

 4       WOULD USE ARE THEY'RE IN THE POSSESSION AND CONTROL OF COOLEY.

 5                    MR. FARNHAM:  ALL THE MORE REASON, YOUR HONOR, WHY A

 6       GRAND JURY SUBPOENA IS BOTH THE LEGAL AND APPROPRIATE WAY FOR

 7       COOLEY TO BRING THEM TO THE GOVERNMENT TO EXECUTE WHAT WOULD

 8       NORMALLY BE A VALID EXERCISE OF THE FOURTH AMENDMENT IN ORDER

 9       TO SEARCH THEM.

10                    THE COURT:  WELL, WAIT.  TIME OUT.  WE NOW HAVE GONE

11       WAY PAST MY KNOWLEDGE OF CYBERSPACE.

12           I'M SORRY, THE DEVICES AREN'T AT COOLEY?  THEY'RE

13       SOMEWHERE IN AN UNDISCLOSED -- WHAT?

14                    MR. HEMANN:  I DON'T KNOW WHERE THEY ARE, YOUR HONOR.

15       I MEAN, I CAN FIND OUT, BUT I DON'T KNOW WHERE THEY ARE.

16                    THE COURT:  WELL, IF IT --

17                    MR. HEMANN:  I MEAN, THEY'RE IN THE POSSESSION AND

18       CONTROL OF COOLEY.

19                    THE COURT:  WELL, I THINK YOU SHOULD FIND OUT WHERE

20       THEY ARE PHYSICALLY LOCATED, AND PLEASE COMMUNICATE THAT TO THE

21       GOVERNMENT.  ALL RIGHT?  I DON'T WANT TO GET INTO A, OH, MY

22       GOODNESS, WE THOUGHT THEY WERE HERE AND THEY'RE THERE.

23                    MR. HEMANN:  I MEAN, THIS IS PART OF -- I UNDERSTAND

24       YOU DON'T WANT TO GET INTO IT, YOUR HONOR, BUT THIS IS PART OF

25       THE ISSUE, WHICH IS THAT THERE IS SOME -- IT ISN'T JUST SORT OF
```

1       SOME SIMPLE MECHANICAL PROCESS THAT, THAT -- OF A -- OF A GUY

2       WHO'S BEEN ACCUSED OF A CRIME OR IS WORRIED ABOUT BEING ACCUSED

3       OF A CRIME GOING AND HANDING SOME OBVIOUS PIECE OF EVIDENCE,

4       YOU KNOW, WRITING SOMETHING INCRIMINATING AND HANDING IT TO HIS

5       LAWYER AND SAYING, AS LONG AS YOU HAVE THIS, NOBODY WILL CATCH

6       ME.

7            THAT'S NOT WHAT THIS IS.

8            THIS IS A -- THIS IS A MAJOR PROCESS THAT REQUIRES LAWYERS

9       TO THINK ABOUT THINGS LIKE HOW DOCUMENTS ARE GOING TO BE

10      PRESERVED, WHERE THEY'RE GOING TO BE PRESERVED, WHAT'S GOING TO

11      BE DONE TO THESE DEVICES.

12           THESE DEVICES ARE NOT -- PULLING THESE DOCUMENTS OFF OF A

13      DEVICE IS NOT JUST -- YOU KNOW, IT'S NOT EASY, AND IT REQUIRES

14      EXPERTS TO DECIDE WHAT TO COPY AND WHAT NOT TO COPY.  A LOT OF

15      THOUGHT GOES INTO IT, AND A LOT OF PROTECTIONS GO INTO IT.

16           AND WHAT THE GOVERNMENT WANTS TO DO IS THEY WANT TO BLOW

17      RIGHT PAST ALL OF THAT AND PRETEND LIKE IT'S JUST, YOU KNOW,

18      ANOTHER -- THAT IT'S LIKE A GUN.

19           IT'S NOT A GUN AND IT'S NOT A BOX.  IT'S NONE OF THESE

20      THINGS.

21           IT'S -- IT'S NONE OF THESE THINGS THAT MAKE IT VERY EASY

22      AND CLEAR.  IT'S MUCH MORE COMPLICATED, AND WHAT THE GOVERNMENT

23      WANTS TO DO --

24               THE COURT:  HERE'S THE PROBLEM.  HERE'S THE PROBLEM.

25      THE MORE YOU MAKE THAT ARGUMENT, THE STRONGER THE ARGUMENT IS

1      THAT YOU SHOULD BE REQUIRED TO TURN OVER THE DEVICES.

2           IF WHAT YOU'RE SAYING TO US IS, YOU KNOW, THERE ARE SO

3      MANY LAYERS OF PROTECTION HERE, YOU KNOW, WE PUT THE BEST MINDS

4      OF THE DEFENSE BAR TO TAKING THESE DOCUMENTS AND, YOU KNOW,

5      WORKING THEIR MAGIC AND CLASSIFYING IT HERE AND PUTTING IT

6      THERE AND SO FORTH, TO WHICH I SAY, WELL, THAT'S GREAT.

7      NEVERTHELESS, THESE ARE ALL OUT OF THE, OUT OF THE -- OUT OF

8      SIGHT IN THE -- I MEAN, IT'S ALMOST LIKE, WELL, IT'S IN MY --

9      THE PHONE IS IN MY HOUSE, BUT THE PHONE IS IN A SAFE AND THE

10     SAFE HAS A COMBINATION AND THE -- AND DA, DA, DA.  YOU CAN'T

11     GET IT.  IT'S VERY COMPLICATED TO GET IT.

12           MR. HEMANN:  THIS IS WHY THE FOURTH AMENDMENT ISSUE

13      IS NOT SO EASY.

14           THE COURT:  NO, THE FOURTH AMENDMENT ISSUE SEEMS TO

15      BE PRETTY EASY.

16      IT'S THAT I DON'T REALLY UNDERSTAND YOUR FIFTH AMENDMENT

17     ARGUMENT.  WELL, THERE HAS BEEN A PROFFER WHERE ESSENTIALLY HE

18     IS -- IT'S A TESTIMONIAL PRIVILEGE THAT HE IS BEING COMPELLED

19     IN HIS TESTIMONY.  THAT'S WHERE IT KICKS IN, AND I DON'T

20     UNDERSTAND THAT TO BE THE CASE RIGHT NOW.

21      NEVERTHELESS, I DON'T KNOW WHETHER THIS HAS BEEN OF

22     COMFORT TO THE GOVERNMENT OR NOT IN TERMS OF YOUR

23     REPRESENTATION.

24      I THINK THAT, THAT YOU SHOULD -- BECAUSE I DON'T WANT TO

25     GO THROUGH SOME RIDICULOUS EXERCISE WHERE SOMEBODY SHOWS UP

1    WITH A SEARCH WARRANT TO COOLEY AND THEY SAY, WELL, I'M SORRY,

2    THE DEVICE IS IN DA, DA, DA, THE 12TH LEVEL OF THE ICLOUD OR

3    SOMETHING.  YOU KNOW, I DON'T WANT THAT TO HAPPEN.

4         SO I THINK THAT YOU HAVE TO MAKE SOME REPRESENTATION TO

5    THE GOVERNMENT WHERE IT IS.

6         IF YOU CHOOSE NOT TO --

7              MR. HEMANN:  WHY DON'T WE MEET AND CONFER WITH

8    MR. FARNHAM AND MR. STERN ABOUT THIS ISSUE AND WE'LL SUBMIT A

9    LETTER TO YOU ON THAT, SORT OF TELLING YOU WHERE WE LANDED ON

10   THAT.

11             THE COURT:  OKAY.  I'M AVAILABLE NEXT WEEK, AND AFTER

12   THAT I'M UNAVAILABLE FOR A MONTH.  SO JUST BE GUIDED BY THAT IF

13   YOU WANT ME TO DO SOMETHING.

14        IF YOU DON'T WANT ME TO DO SOMETHING, I CAN CERTAINLY

15   UNDERSTAND THAT.

16        BUT THAT'S WHAT'S AVAILABLE.

17             MR. FARNHAM:  AND I GUESS, YOUR HONOR, WE CAN PROPOSE

18   THEN NEXT WEEK A SCHEDULE FOR SUBMITTING THE WARRANT AND THE

19   ADDITIONAL --

20             THE COURT:  YOU DON'T HAVE TO PROPOSE A SCHEDULE.

21   JUST DO IT.

22             MR. FARNHAM:  OKAY.  WE WILL SUBMIT THE WARRANT.

23             THE COURT:  YEAH.  DO IT LIKE NORMALLY THE WAY YOU DO

24   IT.  YOU JUST DO IT.

25             MR. FARNHAM:  JUST ONE OTHER THING ON WHAT -- ON OUR

1    PROPOSED PROCESS.

2         WE DO NOT WANT -- THE COURT DOESN'T WANT US TO GET, AND WE

3    DON'T WANT AND MR. HEMANN DOESN'T WANT US TO GET THEIR

4    SELECTION OF DOCUMENTS WHICH INEVITABLY IS IN COOLEY'S

5    POSSESSION, RIGHT?  IF THEY REVIEWED THESE MATERIALS AND THEY

6    FLAGGED THINGS AND THEY, AND THEY'VE PUT THINGS ON THE SERVER

7    AND THEY HAVE SETS OF HOT DOCUMENTS, INCRIMINATING OR

8    OTHERWISE, WE DON'T WANT THAT, AND THAT'S PARTLY WHAT THIS

9    PROCESS WAS INTENDED TO AVOID, RIGHT?

10        SO A SEARCH WARRANT FOR COOLEY'S OFFICES DOESN'T, DOESN'T

11   HELP THEM WITH THAT, AND I THINK IT -- I THINK IT DOES HAVE

12   PRACTICAL AND CONSTITUTIONAL PROBLEMS THAT ARE SOLVED BY A

13   COMPELLED PRODUCTION OF THE DEVICES TO US AND THEN WE SEARCH

14   THEM.

15        I JUST THINK IT'S AN IMMINENTLY PRACTICAL AND LEGAL --

16            THE COURT:  I DON'T KNOW HOW THAT OBVIATES IT.  I

17   DON'T KNOW HOW THAT OBVIATES IT.

18        BUT WHY DON'T YOU HAVE SOME DISCUSSIONS?

19        YOU KNOW, LOOK, WHEN THE DAY IS OVER, THERE'S GOING TO BE

20   A PRODUCTION AND IT'S GOING TO BE AS BROAD AS THEY FRAME THEIR

21   SEARCH WARRANT PROVIDED THAT IT IS, IT IS PARTICULARIZED.

22        BUT IT'S VERY EASY TO PARTICULARIZE A BROAD FIELD.  WE ALL

23   KNOW HOW THAT -- I MEAN, THAT'S EASY TO DO.  YOU DON'T SAY, THE

24   DOCUMENT DATED DECEMBER 1ST.  YOU SAY, ANY DOCUMENT RELATED TO

25   THE REVENUES OF DA, DA, DA.

1          SO, I MEAN, IT'S VERY, VERY BROAD, OR IT'S BROAD IN THAT

2    RESPECT.

3          SO MAYBE YOU CAN WORK OUT AN ACCOMMODATION.  I'M NOT

4    TELLING YOU YOU SHOULD, BUT I'M AVAILABLE TO, YOU KNOW, HELP ON

5    THE LEGAL PROCESS.

6          MR. COHEN:  YOUR HONOR, ONE OTHER ISSUE SINCE WE HAVE

7    YOU, OR SINCE WE MAY NOT HAVE YOU FOR SOME TIME.

8          THE NEW INDICTMENT THAT WAS RETURNED AND FILED YESTERDAY

9    IS SIGNIFICANTLY BROADER THAN --

10         THE COURT:  YEAH, I ASSUME YOU'RE NOT GOING TO --

11    I'LL VACATE THE TRIAL DATE AND MAKE A FINDING THAT, THAT

12    BECAUSE OF THE COMPLEXITY OF THE CASE, I'LL EXCLUDE TIME.

13         AND MAYBE WHAT I OUGHT TO DO IS SET UP A STATUS CONFERENCE

14    IN, WHAT DO YOU THINK, 60 DAYS?

15         MR. COHEN:  AND WHAT WE WOULD INTEND TO DO DURING

16    THAT TIME FRAME IS MEET AND CONFER WITH THE GOVERNMENT ABOUT AN

17    APPROPRIATE PRETRIAL SCHEDULE AND EMAIL THAT TO YOU IN ADVANCE

18    OF THE HEARING.

19         THE COURT:  WHY DON'T WE GET A DATE 60 DAYS OUT, 75

20    DAYS OUT?

21         MR. HEMANN:  THAT'S FINE.

22         MR. FARNHAM:  YOUR HONOR, THE GOVERNMENT IS EAGER AND

23    READY TO HAVE A TRIAL DATE AS SOON AS WE CAN.  COULD WE HAVE

24    THE STATUS IN SEPTEMBER?

25         THE COURT:  YOU SUPERSEDED.  YOU SUPERSEDED.  I'M NOT

1      BLAMING YOU, BUT YOU SUPERSEDED.  SO THEY GET 60 DAYS ANYWAY BY

2      LAW, DON'T THEY?

3          DON'T YOU GET SOMETHING BY LAW ANYWAY?  WHAT IS IT?

4              MR. HEMANN:  I THINK IT'S 30 BY LAW.

5              THE COURT:  OH, 30.

6              MR. HEMANN:  MAYBE 60.  I DON'T REALLY KNOW.

7              THE COURT:  I THINK IT'S 30.

8              MR. HEMANN:  I THINK IT'S 30.

9              THE COURT:  LOOK, LET'S -- EVERYBODY TAKE A DEEP

10     BREATH AND I THINK WE'LL BE JUST FINE.

11         OKAY.

12             THE CLERK:  OCTOBER 6TH AT 10:30, WILL THAT WORK?

13             THE COURT:  IT WORKS PERFECTLY.  EVERYBODY'S

14     VACATIONS ARE FINISHED.  STINSON BEACH IS CLOSED DOWN.  THE

15     RUSSIAN RIVER IS --

16             MS. CLARENCE:  THE WEATHER IS COLD AND NASTY BY

17     OCTOBER 6TH.

18             THE COURT:  EXACTLY.  IT'S GREAT.  IT'LL BE GREAT.

19         OKAY?

20             MR. HEMANN:  THANK YOU, YOUR HONOR.  I'LL BE BACK

21     FROM CLEVELAND BY THEN, TOO.

22             THE COURT:  WELL, YOU BETTER FOR YOUR OWN SANITY.

23             MR. HEMANN:  INDEED.

24             THE COURT:  WHY ARE YOU IN CLEVELAND?  OH, I FORGET,

25     IT'S SORT OF VACATION TIME.

1          MR. HEMANN:  THAT'S WHERE I GO ON VACATION.  YOU GUYS

2     ALL GO TO FANCY PLACES, I COME TO CLEVELAND.  I'M A MAN OF THE

3     PEOPLE.

4          THE COURT:  WELL, THAT'S VERY NICE.

5        GOOD-BYE, EVERYBODY.

6          MR. HEMANN:  THANK YOU, YOUR HONOR.

7          THE COURT:  AND, MR. WEINGARTEN, THAT WAS AN

8     EXCELLENT ARGUMENT YOU MADE TODAY.

9        (LAUGHTER.)

10          MR. WEINGARTEN:  YOUR HONOR, I FEEL LIKE I ADDED A

11     LOT TODAY, AND I'M GLAD YOU RECOGNIZE THAT.  THANK YOU.

12        (LAUGHTER.)

13          THE COURT:  OKAY.  GOOD-BYE.

14          MR. HEMANN:  THANK YOU, YOUR HONOR.

15          MR. FARNHAM:  THANK YOU, YOUR HONOR.

16          THE CLERK:  THAT CONCLUDES TODAY'S PROCEEDINGS.

17     THANK YOU.

18        (THE PROCEEDINGS WERE CONCLUDED AT 12:00 P.M.)

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7           I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18          DATED:  AUGUST 12, 2022

19

20

21

22

23

24

25