ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LLOYD A. FARNHAM (CABN 202231)
NOAH STERN (CABN 297476)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Noah.Stern@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. CR 21-353-CRB** |
| Plaintiff, | **DECLARATION OF KARIM FARIS** |
| v. | |
| MANISH LACHWANI, | |
| Defendant. | |

I, Karim Faris, declare and state as follows:

1.    I am currently a General Partner with GV, a venture capital firm formerly known as Google Ventures that invests capital in startup technology companies. GV's limited partner, Alphabet, Inc., is the parent company of Google, LLC. Despite its affiliation with Google, GV is managed separately by its general partners. I have been employed by the firm for more than 10 years. My education includes a bachelor's degree in computer engineering, a master's degree in electrical engineering, and a master's of business administration.

2.    I first met Manish Lachwani in approximately 2012 when GV invested in Appurify, Inc. ("Appurify"), a company that Mr. Lachwani founded. I served on the board of Appurify, from

DECLARATION OF KARIM FARIS       1
CR 21-353-CRB

1  approximately 2012 to 2014 when Appurify was acquired by Google.

2  3. In late 2015, Mr. Lachwani approached me about a new company he was starting, and we
3  discussed early-stage funding for the company. Soon after, based in part upon my recommendation, Redacted
4  Redacted , HeadSpin, Inc. ("HeadSpin" or the
5  "Company"). I also joined the HeadSpin board of directors ("Board"). After GV's investment in
6  HeadSpin, the Board was comprised of myself and Mr. Lachwani.

7  4. As an investor, GV was entitled to receive quarterly financial statements of HeadSpin. I
8  or GV staff members regularly requested financial statements from Mr. Lachwani or HeadSpin's
9  bookkeeper. HeadSpin did not always provide these financial statements in a timely fashion, and GV
10  staff or I would often have to follow up on the request multiple times before receiving them. When
11  financial statements were provided, they were often provided months after the end of a quarter.

12  5. In about 2018, Nikesh Arora also joined the Board.

13  6. While Mr. Lachwani was HeadSpin's CEO and I was a director, I frequently urged Mr.
14  Lachwani to hire a Chief Financial Officer ("CFO") to improve the financial systems of the Company,
15  to ensure that financial statements were prepared and timely disclosed to investors, and to enable him to
16  focus his efforts on other aspects of the business. At one point, I provided him with the names and
17  resumes of potential CFO candidates. However, Mr. Lachwani never hired a CFO for HeadSpin.

18  7. During my time serving as a director on HeadSpin's Board, I periodically checked with
19  Mr. Lachwani to make sure that the Company's cash reserves were appropriately managed. The
20  Company's cash reserves primarily consisted of funds that the Company had raised from investors. I
21  had told Mr. Lachwani that I believed the invested capital must be held in very safe, liquid instruments
22  such as government bonds, certificates of deposit, and deposit accounts. In approximately January 2018,
23  I asked Mr. Lachwani to send me HeadSpin's bank account statements so that I could verify that the
24  balances in Company accounts matched the amount of cash I expected the Company to have on hand.
25  In response to that request, Mr. Lachwani sent me Wells Fargo bank statements and an account
26  statement purportedly from an account held at LPL Financial. The LPL Financial statement he sent me
27  showed a balance of more than $28.8 million and showed that it was invested in "cash and cash
28  equivalents" and "certificates of deposit."

DECLARATION OF KARIM FARIS 2
CR 21-353-CRB

8.     The account documents that Mr. Lachwani sent me in January 2018 confirmed what Mr. Lachwani had told me and what I believed to be true: that the Company's cash reserves were held in in accounts held by the Company and were held in very safe and liquid investments or bank accounts.  If I had known that HeadSpin's funds, which were obtained from investors and meant to be used for HeadSpin's operating expenses and growth, had been invested in stocks and options or any other risky or volatile investments, I would have taken immediate steps to remedy the situation.

9.     While I was a member of the Board and Mr. Lachwani was the CEO, Mr. Lachwani periodically provided me updates regarding the annual recurring revenue ("ARR") and revenue of the Company.  I relied on and trusted Mr. Lachwani to provide accurate and correct information about HeadSpin's financial status, including the Company's cash deposits, revenue, and ARR.  I also expected and trusted Mr. Lachwani to provide accurate information to HeadSpin's investors and potential investors.  I had no reason to doubt the truthfulness and accuracy of the revenue and ARR numbers that Mr. Lachwani provided to me, to investors, and to potential investors.

10.     In approximately March 2020, Mr. Arora informed me that a senior HeadSpin employee, Stefanos Loukakos, alleged that Mr. Lachwani was, among other things, overstating HeadSpin's ARR and revenue, overstating the number of devices in its device cloud, and misrepresenting its customers. Mr. Loukakos sent me a presentation containing these and other allegations.

11.     I now believe that Mr. Lachwani misled me, Mr. Arora, and HeadSpin investors by providing financial statements with inflated revenue and providing investment decks that overstated the Company's ARR and number of devices in its device network.  After reviewing the allegations and information from Mr. Loukakos, Mr. Arora and I formed a special committee of the Board to investigate the allegations.  At the direction of the special committee, HeadSpin's outside corporate counsel hired Guidepost Solutions to conduct the investigation.  Guidepost, in turn, engaged Hemming Morse, a forensic accounting firm, to assist them with the investigation.  The investigation revealed facts consistent with the allegations made by Mr. Loukakos.  Among other things, the investigation determined that Mr. Lachwani had overstated the Company's ARR and revenue.  In addition, the investigation revealed that Mr. Lachwani had misrepresented the use of the HeadSpin service by certain customers and overstated the number of devices in the Company's the device cloud.  After learning

these facts, Mr. Arora and I asked Mr. Lachwani to step down as CEO in approximately May 2020.

I swear under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.  Signed this 19th day of October 2023, in <u>Los Altos,</u>         , California.

DATED:     October 19, 2023

KARIM FARIS

DECLARATION OF KARIM FARIS                                4
CR 21-353-CRB