No. 24-2925

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,

v.

MANISH LACHWANI,
DEFENDANT-APPELLANT.

On Appeal from the United States District Court for the
Northern District of California, Hon. Charles R. Breyer
Case No. 21-cr-00353

## REPLY IN SUPPORT OF
## MOTION FOR BAIL PENDING APPEAL
## FROM DEFENDANT-APPELLANT MANISH LACHWANI

COOLEY LLP
John Hemann (SBN 165823)
Max A. Bernstein (SBN 305722)
Hannah Pollack (SBN 336599)
Zoë Helstrom (SBN 339043)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:  +1 415 693 2000
Facsimile:   +1 415 693 2222

*Attorneys for Defendant-Appellant
Manish Lachwani*

## INTRODUCTION

As an initial matter, the government does not oppose Mr. Lachwani's request for a stay of his surrender date, pending resolution of Mr. Lachwani's Motion for Bail Pending Appeal (the "Motion"). *Given that Mr. Lachwani's surrender date of October 2, 2024, is fast approaching, Mr. Lachwani respectfully requests that this Court grant that relief immediately.*

As for the government's opposition to the Motion itself (the "Oppo." or "Opposition"), it only reinforces why the Motion should be granted. The government concedes that Mr. Lachwani is not likely to flee and does not pose any danger to public safety. There was never a serious argument to the contrary.

Instead, the government asserts that Mr. Lachwani's appeal will not raise substantial issues. But the government's Opposition, in attempting to show as much, demonstrates just the opposite. The government spends thirteen pages arguing that it *should* win on the merits. The government devotes these pages to arguing from, and attempting to distinguish, caselaw, as well as interpreting the Sentencing Guidelines commentary, but it does not cite a single authority that directly resolves the issues raised by Mr. Lachwani's appeal.

There is no question the Court should ultimately engage with the points argued by the government—as each presents complex considerations that must be resolved on the merits. But in tasking the Court with these analyses now, the Opposition

1

demonstrates that Mr. Lachwani's appeal involves substantial issues that have not yet been decided by this Court. This Court should not prejudge the case based on the present motion briefing, but this briefing does show that there is a non-frivolous debate to be had over the issues on appeal.

Finally, the government claims that Mr. Lachwani's sentence would not be significantly reduced, should he prevail on his appeal, because of a recent transaction involving HeadSpin. But this new argument was never made below—and no trial court has considered it. Moreover, the argument assumes that Mr. Lachwani can be held responsible for losses suffered in 2024 by virtue of his criminal conduct in 2018—without any evidence of a causal connection. If the Court were even to consider this argument for the first time on appeal, it would itself raise myriad substantial issues regarding timeliness and waiver by the government, the requirement that losses be causally connected to criminal conduct, and whether losses allegedly suffered *after* a sentence is imposed can be considered at all.

For these reasons, each of the elements for bail pending appeal is met and Mr. Lachwani's Motion should be granted.

## ARGUMENT

### I. REQUEST FOR STAY OF SURRENDER DATE

The government did not oppose Mr. Lachwani's request for stay of his surrender date. Accordingly, Mr. Lachwani's surrender date should be stayed

pending resolution of the Motion. Mr. Lachwani respectfully requests that the Court rule on this relief so that there is certainty as to his surrender date, which is otherwise set for October 2, 2024.

## II.   MOTION FOR BAIL PENDING APPEAL

### A.   The Opposition Only Reinforces There are Substantial Issues to be Resolved and Oversimplifies Mr. Lachwani's Arguments.

The government asserts that Mr. Lachwani's appeal is so easily decided that it does not raise a substantial issue of law, *but then spends thirteen pages arguing why there was investor loss*. (Oppo. at 9-21.) The government does not point to any authority or precedent that resolves the issues raised by Mr. Lachwani's appeal. Instead, the government attempts to analogize to existing caselaw, argues its interpretation of Sentencing Guidelines commentary, and attempts to distinguish this Court's decision in *Ortland* (taking liberties at each step). (*Id.*) That is, the government's opposition to Mr. Lachwani's Motion reads as a fulsome appellate brief on the merits. The government engages in this extended argument on the issues Mr. Lachwani's appeal raises precisely because these issues are complicated and cannot be easily dispensed with *due to their substantial nature.*

But even the government's lengthy treatment oversimplifies Mr. Lachwani's argument and misleadingly frames the basic issues the wrong way. The government characterizes the case as (a) a fraud followed by (b) simple repayment of the proceeds of the fraud to investors after discovery—and nothing more. But this

3

ignores the facts and legal issues that give substance to the appeal. After a vote by the shareholders, the ownership of HeadSpin was reorganized and the Series C shareholders could elect to take funds out of the company, along with a promissory note. Some did and, to them, the company (not Mr. Lachwani) distributed money and promissory notes in exchange for shares. The government did not, at sentencing, present any evidence to the district court that investors actually lost money as a result. The district court did not engage with the undisputed evidence regarding what happened in the recapitalization—a fundamental flaw in its calculation of loss.

The district court's analysis was flawed because the cash the Series C investors provided was never spent and instead was held in company accounts (Mr. Lachwani did not receive even a penny of this money). (*See* Motion at 5.) Because the Series C investors had a shareholder preference over the common stock shareholders, they had a priority claim on this money in the event the company dissolved, went into bankruptcy, or otherwise made distributions. This preference— the right to a priority distribution of the company's cash holdings—belonged to the Series C investors from the moment they invested in Headspin. Mr. Lachwani did not give them this right after the fraud was discovered. In fact, Mr. Lachwani never held the power to grant a shareholder preference, even at the time of the investments. But the government ignores this dynamic altogether in its Opposition.

This preference is at the heart of Mr. Lachwani's appeal. As a result of it,

when the company and its shareholders considered how to recapitalize in the aftermath of the allegations regarding the company's finances, the Series C investors (like the claimants in *Ortland*) had a claim on the very cash they had invested. (*See* Motion at 11-13.) That is, had the company dissolved or gone bankrupt, the Series C investors would have exercised their preference and received a distribution. The record shows that the company's assets exceeded its liabilities such that this distribution would have equaled their investments. In fact, this is the very point of "preferred stock"—it protects the shareholder *from loss* if the company reorganizes.

The company was able to avoid dissolution or bankruptcy, primarily because of the enormous cash reserves it maintained (*see* Motion at 5 (citing record showing $109 million cash assets at time of reorganization)), but had to honor this preference by providing distributions to the Series C investors to do so. Critically *no one gave these investors something they did not already have a right to*. The company had tens of millions of dollars, the Series C investors had an ownership stake in the company that gave them a preference on that cash (and the company's other assets), and they therefore received the cash through distributions during a reorganization.

The government's arguments in the Opposition never grapple with these circumstances. The Ninth Circuit came closest to doing so in *Ortland*, as explained in the Motion. (Mot. at 11-13.) The government asserts the issues here were not raised in *Ortland* at all (Oppo. at 16), but ignores the plain language of the decision.

5

The Court explained that investors had received a portion of their investment in distributions during a receivership and that "the district court properly found that the actual loss to the investors was the total amount they did not regain." *United States v. Ortland*, 109 F.3d 539, 548 (9th Cir. 1997). The government's attempt to distinguish this case cannot change the simple fact that this Court wrote that the district court "properly found" that amounts regained by investors from a receiver *are not loss*. *Id*. Mr. Lachwani contends that this holding has clear application to his case—the amounts investors received during the company's reorganization, and due to their preference, similarly are not loss. (Motion at 11-12.) The government disagrees. This is a substantial issue.

**B.     None of the Government's Cases Address, Let Alone Resolve, the Issues on Appeal.**

The authority cited by the government only further demonstrate the substantial issues raised by the appeal. The government's cases stand for the uncontested concept set forth in Sentencing Guidelines commentary that repayments by the defendant, or an individual acting jointly with the defendant, after the discovery of the offense are not credited against loss. Sentencing Guidelines § 2B1.1 note 3(E)(i). Mr. Lachwani will argue on appeal that the comment does govern here because it applies only when a defendant acts to return stolen money. That did not happen in this case. There was no evidence presented by the government or relied upon by the district court that a repayment was made by Mr. Lachwani.

6

The cases cited by the government are therefore inapposite. For example, the government repeatedly cites *United States v. Stoddard*, 150 F.3d 1140, 1146 (9th Cir. 1998). There, Stoddard argued that his repayment of escrow funds after the initial discovery of his fraud should count against actual loss. *Id*. In rejecting that argument, the Court merely found that amounts *returned by the defendant* after discovery of the fraud cannot reduce loss. *Id*. The government cites *United States v. Bright*, 353 F.3d 1114, 1118 (9th Cir. 2004), and *Kharana v. Gonzales*, 487 F.3d 1280, 1284 (9th Cir. 2007)), as further support for this uncontroversial proposition.

But none of these cases address the facts here: Mr. Lachwani did not "return" anything. Instead, the investors exercised a preference during the company's reorganization. *Stoddard*, *Bright*, and *Kharana* did not consider remotely similar circumstances and cannot resolve the issues Mr. Lachwani's appeal will raise. Moreover, neither Mr. Lachwani, nor anyone acting with him, caused the recapitalization, which was undertaken by the board of directors and the investors after Mr. Lachwani left the company, again distinguishing these cases. They simply do not resolve the issues Mr. Lachwani will raise.

**C.     The Government's Reference to Later-in-Time Events is Irrelevant.**

The government argues in the Opposition, for the first time in connection with sentencing, that a recent transaction involving acquisition of HeadSpin would change the loss calculation and require a finding of loss, even if Mr. Lachwani

7

prevails on appeal. (Oppo. at 17-18.) This argument is deeply misguided for multiple reasons.

First, the government never raised this argument before the district court. Even if the government has not waived the argument, the present Motion (or more specifically the opposition and reply to the same) is no place to evaluate it on the merits. There is no record before this Court on this issue, the government never provided appropriate discovery to Mr. Lachwani, and a trial court has never considered the factual or legal issues this argument presents. If this argument is to be evaluated at all, that evaluation should occur in the trial court, after a sufficient record is established and the issues are briefed and heard.[1]

Second, the argument relies on a loss investors allegedly suffered *in 2024*, six years after Mr. Lachwani's fraud and four years after he had anything to do with the company. The government will never be able to connect this alleged loss to Mr. Lachwani's criminal conduct in 2018-19 and does not even attempt to do so in the Opposition. Notably, in the intervening years, the company has secured new patents, hired extensively, and continued to negotiate new contracts. (*See* ECF 105 at 15.) It was only in a much more recent timeframe, long after Mr. Lachwani left the company and when startup valuations plummeted everywhere, that HeadSpin

---

[1] This is an argument that the government raised for the first time in connection with the *restitution* hearing conducted by the Court on August 22, 2024, *after* Mr. Lachwani was sentenced. As of the date of this filing, the district court has not yet issued a decision on restitution.

8

appears to have faced headwinds. There is no basis to fault *Mr. Lachwani* for HeadSpin's recent troubles. *See, e.g.*, *United States v. Tyler*, 767 F.2d 1350, 1351-52 (9th Cir. 1985) (finding loss not caused by defendant's fraud irrelevant).[2]

Third, at sentencing the government took an entirely different approach and argued that this approach should *not* be the basis for the district court's loss calculation. Specifically, the government argued that loss must be fixed as (1) the entire amount of the investment or (2) the value of the shares at the moment they were purchased. (ECF 103 at 14-17.) There is no basis for the government to take an inconsistent position only now.

Finally, this new argument should not be considered for the reasons noted above. But at a minimum, the argument would present the very kind of substantial issues that the present analysis should consider. For example, it would raise issues such as whether the government has waived the argument, whether there is sufficient evidence to causally tie the events in 2024 to Mr. Lachwani's 2018 conduct, and whether the government can raise altogether new loss arguments *after* a sentence has been imposed. Each of these issues would be substantial in its own right.

---

[2] The government offers no analysis of the economic and financial events that occurred over the last four years that impacted the value of the company. Thus, because of the significant passage of time and myriad unexamined intervening macro- and micro-economic and financial events, the ultimate sale price of the company is causally disconnected from Mr. Lachwani's criminal conduct.

9

### D. It Is Appropriate to Consider Extraordinary Circumstances.

The government gives short shrift to the impact Mr. Lachwani's departure would have on his family, given unique medical circumstances, and ignores the testimony offered by Mr. Lachwani's wife regarding the critical support he provides. These issues are serious and the relief requested would do much to help alleviate them. Mr. Lachwani does not seek an "end-run around the bail pending appeal standard," as the government accuses. (Oppo. at 21.) As explained in his Motion and reiterated here, Mr. Lachwani *satisfies* the standard laid out in 18 U.S.C. § 3143(b)(1). That is, the Motion should be granted regardless of his family's condition. But these exceptional circumstances are nonetheless relevant to the bail pending appeal analysis and should favor granting the Motion here, as explained in the Motion. Additionally, Mr. Lachwani's family obligations provide near-conclusive certainty that he will neither flee nor present a danger to the community, and instead that he will vigorously litigate in this Court the substantial sentencing issues presented.

### CONCLUSION

For the foregoing reasons, Mr. Lachwani respectfully requests that the Court first stay his surrender date and then order his release pending appeal.

10

Respectfully submitted,

Dated: September 23, 2024 COOLEY LLP

By: */s/ John Hemann*
John Hemann

*Attorneys for Defendant-Appellant Manish Lachwani*

# CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 27(d) AND CIRCUIT RULE 27-1(1)(d)

I certify that this filing complies with the requirements of Federal Rule of Appellate Procedure Rule 27(d)(1)(E) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I certify that this filing complies with the length limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,441 words according to the word count of Microsoft Word.  I further certify that this filing complies with the page limitation of Circuit Rule 27-1(1)(d) because it does not exceed 10 pages, excluding the parts of the filing exempted under Federal Rule of Appellate Procedure 27(a)(2)(B) and 32(f).

Respectfully submitted,

Dated:  September 23, 2024         COOLEY LLP

By: */s/ John Hemann*
John Hemann

*Attorneys for Defendant-Appellant Manish Lachwani*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2024, I electronically filed the foregoing Reply in support of Motion for Bail Pending Appeal with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

Dated:  September 23, 2024                         COOLEY LLP

                                                By: */s/ John Hemann*
                                                     John Hemann

                                                *Attorneys for Defendant-Appellant Manish Lachwani*

308307364

13