IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MANISH LACHWANI,<br>Defendant. | Case No. 21-cr-00353-CRB-1<br><br>**RESTITUTION ORDER** |

The government seeks restitution with respect to five purported victims of Defendant Manish Lachwani's fraud scheme. The Court hereby orders restitution be paid to Victim 2, Victim 5, and Victim 6 consistent with the following.

I.   **BACKGROUND**

The Court set out the history of Lachwani's fraud scheme in its prior order calculating loss amounts for sentencing. Loss Calculation Order (dkt. 126) at 2–4. Since the Court issued that order, HeadSpin—Lachwani's company and the basis of his fraud scheme—was acquired and HeadSpin stock was canceled without payment of any consideration to shareholders, including some of the victims at issue in this order. See Stern Decl. (dkt. 151-2) Exs. RR & TT. Investors who had received notes as part of HeadSpin's earlier recapitalization, see Loss Calculation Order at 3–4, had their notes canceled but were able to receive some or all of their principal, depending on when they received their notes. See Stern Decl. Exs. RR & TT.

The government charged Lachwani by complaint in August 2021, Compl. (dkt. 1), and Lachwani pleaded guilty to multiple counts in April 2023, Plea Agmt. (dkt. 88). As part of his plea agreement, Lachwani agreed to "pay full restitution for all losses caused by

all the schemes or offenses with which [he] was charged in this case." Id. ¶ 9. The government now seeks restitution for five victims. Restitution Mem. (dkt. 150).

## II.  LEGAL STANDARD

The Mandatory Victims Restitution Act requires district courts to order, in certain categories of cases (including this one), restitution "to the victim of the offense." 18 U.S.C. § 3663A(a)(1). A victim is "a person directly and proximately harmed as a result of the commission of an offense." Id. § 3663(a)(2). Their loss must be "caused by the specific conduct that is the basis of the offense of conviction." United States v. Gossi, 608 F.3d 574, 579 (9th Cir. 2010) (citation omitted). And a restitution award "can only include losses directly resulting from a defendant's offense." Id. (citation omitted). The government bears the burden of proving by a preponderance of the evidence both "that a person or entity is a victim for purposes of restitution" and "the amount of the loss." Id. (citations omitted).

## III.  DISCUSSION

The government seeks restitution on behalf of five victims in the amounts reflected in the table below:

| Victim Identifier | Restitution Sought |
|---|---|
| Victim 1 | $528,928.98 |
| Victim 2 | $2,232,542.16 |
| Victim 4 | $2,750,000.00 |
| Victim 5 | $1,150,271.00 |
| Victim 6 | $30,000.00 |

Lachwani raises two overarching challenges to restitution: (1) that the government's request is untimely and (2) that the government has failed to prove that any loss was directly and proximately caused by Lachwani's conduct. Both arguments fail. Lachwani also challenges the restitution amounts for each individual victim, which the Court considers after Lachwani's global arguments and concludes have merit.

### A. Timeliness

Lachwani, relying on statutory language setting forth the appropriate timing of restitution claims, argues that the government's request for restitution is untimely. See Opp. (dkt. 159) at 4–6. To be sure, the statute requires that the government "promptly"— and "not later than 60 days prior to the date initially set for sentencing"—"provide the probation officer with a listing of the amounts subject to restitution." 18 U.S.C. § 3664(d)(1). And here the government failed to submit any claim for restitution until April 19, 2024, the date of the final sentencing hearing. See Stern Decl. (dkt. 150-1) ¶ 2; Apr. 19, 2024 Sent'g Tr. (dkt. 140) 20:17–21. So the government failed to comply with the general timing requirements of § 3664.

But Lachwani makes too much of the government's lateness, as nothing in § 3664 precludes the government from seeking restitution on behalf of crime victims. Rather, Congress intended the procedural mechanisms provided in § 3664 to benefit "the victims, not the victimizers":

> The legislative history reveals Congress's intent that the time limits in § 3664 not be relied upon for protection by defendants. In its report on the bill that would become the MVRA, the Senate Judiciary Committee explicitly refused to relate the statute's procedural framework to the interest of defendants, stating that the "sole due process interest of the defendant being protected during the sentencing phase is the right not to be sentenced on the basis of invalid premises or inaccurate information." Consequently, we recognized in United States v. Cienfuegos that "the purpose behind the [time limits in § 3664] is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets."

United States v. Moreland, 622 F.3d 1147, 1171–72 (9th Cir. 2010) (citations omitted). Failure to comply with the procedural requirements of § 3664 is therefore "harmless error absent actual prejudice to the defendant." Cienfuegos, 462 F.3d at 1163.

Lachwani asserts that the government's delay prejudiced him because the Court ordered an above-guidelines fine of $1 million that Lachwani did not contest but would have contested had he known of the restitution claims. Opp. at 4–5. He also states that he would have developed different arguments and expert opinions related to loss amounts had

3

he known that restitution would be at issue. Id. at 5 n.2.

This argument is not persuasive, however, because Lachwani was on notice through his plea agreement that the government would seek, and that he would be required to pay, "full restitution for all loses caused by all the schemes or offenses with which [he] was charged." Plea Agmt. ¶ 9. A defendant's acknowledgement in a plea agreement that they will owe restitution is "the functional equivalent of the notice required under section 3664(d)(5)." Cienfuegos, 462 F.3d at 1163; Moreland, 622 F.3d at 1173. Further, the government notified Lachwani's counsel before the sentencing hearing that it would seek a restitution hearing—a fact that Lachwani's counsel specifically acknowledged in the sentencing hearing. Apr. 19, 2024 Sent'g Tr. at 20:17–21. All this put Lachwani and his counsel on notice that restitution claims—which are mandatory under the MVRA—were forthcoming. Had Lachwani wanted to contest the $1 million fine on the grounds that future restitution claims would make the fine unreasonable, he could have done so (or foreshadowed that he might do so later depending on the restitution sought) at the sentencing hearing. The same goes for undeveloped arguments and expert opinions related to loss amounts.

Lachwani additionally contends that he has been prejudiced by the government taking inconsistent positions between calculating loss amounts at sentencing to calculating restitution now. Opp. at 5–6. But calculating loss amount is not the same as calculating restitution, see Gossi, 608 F.3d at 581, so the government's positions are not necessarily inconsistent. (In any case, as explained below, the Court does not adopt the government's position that restitution should be ordered beyond the previously calculated loss amount.) So Lachwani has not experienced actual prejudice due to the government's delay, and his timeliness argument fails.

**B.     Causation**

Lachwani next challenges the government's restitution claims on their merits, both with a global challenge to whether he caused the victims' losses and with individual challenges to the victims' restitution claims.

4

Lachwani's overarching merits argument is that the government has failed to demonstrate by a preponderance of the evidence that the victims' losses were directly caused by the conduct for which he was convicted. He contends that the victims' losses were caused by HeadSpin canceling the notes that it issued following its recapitalization, not by his own criminal conduct. Opp. at 6–9.

Lachwani is correct that the victims' losses materialized several years after he left HeadSpin, but that does not make restitution improper. The relevant question is whether his criminal conduct "directly" caused the victims' losses. Gossi, 608 F.3d at 579 (citation omitted). That inquiry does not hinge on whether there were other contemporaneous or intervening causes. See United States v. Gamma Tech Indus., Inc., 265 F.3d 917, 928 (9th Cir. 2001) ("Defendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct.").

The government has met its burden of showing that Lachwani's criminal conduct directly caused the victims' losses, at least with respect to their lost investments from overinflated stock values. Lachwani's fraud scheme caused the victims to invest in HeadSpin in the first place, and all the subsequent conduct that resulted in them losing their investments in excess of HeadSpin's actual (as opposed to fraudulently exaggerated) value is directly traceable to his fraud scheme. Any subsequent action, such as the recapitalization, did not affect this form of their loss. Lachwani argues that HeadSpin made the victims whole when it issued them recapitalization notes, Opp. at 8, but this argument fails to account for the fact that collateral (such as recapitalization loans) does not offset losses for purposes of calculating restitution. See Robers v. United States, 572 U.S. 639, 640–41 (2014). Lachwani's global causation argument therefore fails.

C.     **Victim-Specific Arguments**

Lachwani also challenges on a victim-by-victim level the restitution amounts that the government seeks.

**Victim 1.** The government seeks $528,928.98 in restitution to be paid to Victim 1 for "expenses incurred responding to the parallel government investigations that led to Lachwani's conviction in this case." Restitution Mem. at 5. To be more precise, though, Victim 1's restitution would go to cover their expenses associated with the Securities and Exchange Commission's civil investigation into Lachwani, not the government's criminal investigation. Altman Letter (dkt. 154-2, Ex. UU). This matters for the purpose of determining whether Victim 1 is entitled to restitution.

The MVRA provides that restitution can include "other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). The Supreme Court has interpreted this clause narrowly to encompass only "government investigations and criminal proceedings" and to exclude "private investigations and civil or bankruptcy litigation." Lagos v. United States, 584 U.S. 577, 581 (2018). And the Second Circuit—the sole Court of Appeals to have addressed the issue—has expressly held that the MVRA does not encompass expenses related to an SEC investigation. United States v. Afriyie, 27 F.4th 161, 170–72 (2d Cir. 2022). The Court agrees with the Second Circuit's reasoning: the MVRA is a criminal statute, and its focus must be so understood. Id. at 171–72 ("Nothing in the MVRA suggests its applicability to civil offenses."); see also Lagos, 584 U.S. at 581 (expressly excluding expenses related to civil litigation). Accordingly, Victim 1 is not entitled to restitution because all its expenses relate to the SEC's investigation rather than the government's criminal investigation of Lachwani.

**Victim 2.** The government seeks $2,232,542.16 in restitution to be paid to Victim 2—$2,202,206.06 in investment-related losses and $30,336.10 for expenses incurred related to the government's criminal investigation of Lachwani. Restitution Mem. at 7–8. Taking the second request first, the government has not met its burden of showing by a preponderance of the evidence that Victim 2 incurred these expenses related to the criminal investigation. The invoices submitted by the government indicate that Victim 2's expenses were largely incurred in response to the SEC's investigation of Lachwani, not the

6

government's criminal investigation. See Victim 2 Invoice (dkt. 162-1, Ex. BB). Although several entries in Victim 2's invoices refer to the government's criminal investigation into Lachwani, see, e.g., id. at 7 (Apr. 7, 2021 entry), they do not disentangle the criminal investigation from the SEC investigation. It is the government's burden to show that these expenses are properly restitution under the MVRA; because the timesheets are unclear and the government has offered no additional evidence beyond Victim 2's conclusory determination that it incurred $30,336.10 in investigation-related expenses, the Court declines to award restitution to Victim 2 for these expenses.

As for Victim 2's investment-related losses, Lachwani correctly points out that what the government now seeks as restitution is inconsistent with the Court's earlier calculation of loss amounts. Opp. at 10; see also Loss Calculation Order at 20–21 (calculating loss amount). The Court expressly rejected the government's argument that the loss amount was "the full value of the money obtained by HeadSpin during the period of Lachwani's fraudulent scheme," explaining that "neither the facts nor the law support the view that HeadSpin stock can or should be judged to have been worthless at the time of the investment." Loss Calculation Order at 12–13. Accordingly, the Court limited the loss amount to the overage in HeadSpin stock valuation due to the fraud, concluding that the loss amount was $3,149,056, or 5.248% of the total amount that Series C investors invested in HeadSpin. Id. at 20–21. Lachwani, in reliance on this methodology, contends that Victim 2 should receive as restitution no more than 5.248% of its Series C investments, which would total $787,263.97.[1] Opp. at 10.

The government opposes Lachwani's view, arguing that courts calculate loss amounts and restitution differently. Restitution Mem. at 3. True enough. But though restitution amounts are not limited to "reasonable foreseeable losses," they must still be "direct and proximate" to a defendant's criminal conduct. Gossi, 608 F.3d at 581 (emphasis in original). And "any subsequent action that contributes to the loss, such as an

---

[1] Lachwani proposes $787,199, but this appears to be due to a rounding error.

7

intervening cause, must be directly related to the defendant's conduct." Gamma Tech Industries, 265 F.3d at 928. Though Lachwani's fraud directly caused the victims to suffer losses in the amount that his fraud artificially inflated HeadSpin's stock prices, the government has not shown by a preponderance of evidence that his fraud directly and proximately caused them to lose their entire investments, especially in light of the years of time that elapsed and HeadSpin's recapitalization efforts leading up to HeadSpin's acquisition. Restitution is therefore appropriate only for the fraudulent overage in HeadSpin's stock price, meaning that Victim 2 is entitled to $787,263.97 in restitution.

**Victim 4.** The government seeks $2,750,000 in restitution to be paid to Victim 4 arising out of Victim 4's investment in convertible notes. Victim 4, however, is not a Series C investor. Hart Rpt. (dkt. 126) at 19–20. And though the government is correct that Lachwani's plea agreement provides that he will "pay restitution to all victims who were defrauded through the charged scheme, not limited to the counts to which he pleaded guilty," Reply (dkt. 162) at 5, the government still must meet its burden of tracing specific restitution amounts to Lachwani's criminal conduct. See Gossi, 608 F.3d at 579. The government has not done so. See Loss Calculation Order at 20 & n.14. Moreover, the government's belated reversal of its initial position with respect to Victim 4 (that Victim 4 was not entitled to restitution) raises notice and prejudice concerns not present with respect to the other victims. See Jan. 10, 2024 Stern Email (dkt. 159-3) ("the government does not anticipate seeking restitution for this claim because the relevant investments appear to have occurred prior to the time period of the convicted conduct"). Thus, Victim 4 is not entitled to restitution.

**Victim 5.** The government seeks $1,150,271 in restitution to be paid to Victim 5 for investment-related losses. As with Victim 2, the Court applies its loss calculation methodology to Victim 5's total investment ($7,834,717) and concludes that Victim 5 is entitled to $411,199.69 in restitution.

**Victim 6.** The government seeks $30,000 in restitution to be paid to Victim 6 for investment-related losses. As with Victims 2 and 5, the Court applies its loss calculation

methodology to Victim 6's total investment ($100,000) and concludes that Victim 5 is entitled to $5,248.43 in restitution.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** Lachwani to pay restitution in the following amounts:

$787,263.97 to Victim 2

$411,199.69 to Victim 5

$5,248.43 to Victim 6

**IT IS SO ORDERED.**

Dated: August 7, 2025



CHARLES R. BREYER
United States District Judge